426 So.2d 1308 (1983)
STATE of Florida, Appellant,
v.
Pedro A. CRUZ, Appellee.
No. 82-1502.
District Court of Appeal of Florida, Second District.
February 25, 1983.
Jim Smith, Atty. Gen., Tallahassee, and Ann G. Paschall, Asst. Atty. Gen., Tampa, for appellant.
Jerry Hill, Public Defender, Bartow, and Glenn E. Brown, Asst. Public Defender, Tampa, for appellee.
SCHEB, Judge.
The state filed an information charging Pedro A. Cruz with grand theft. Cruz moved to dismiss the charges under Florida Rule of Criminal Procedure 3.190(c)(4) on the ground that the undisputed facts showed he was entrapped as a matter of law. The trial court granted Cruz's motion on the authority of State v. Casper, 417 So.2d 263 (Fla. 1st DCA 1982).[1] We disagree with the First District's opinion in Casper. We reverse.
In Cruz's motion to dismiss, he contended that the following facts were undisputed and did not establish a prima facie case of guilt.
1. On March 1, 1982, certain members of the Tampa Police Department, specifically, Officer Tommy Ellis, Officer John L. Counsman, Officer George L. Lease, Officer P. Saladino, and Officer M.D. Johnson, were conducting a decoy operation in the area of West Kennedy Boulevard and Brevard Street.
2. As part of said operation, Officer Tommy Ellis was dressed as a low income individual wearing blue slacks, a torn checked coat and a golf hat and was the decoy in the operation.
3. Officer Ellis was simulating a state of intoxication, to wit: he was doused with alcohol, pretending to be drinking wine from a bottle, and was coughing and belching.
4. Officer Ellis was stationed near an alleyway, leaning against a building with his face to the building, and displaying currency in the amount of $150.00, the bills being paper-clipped together, from his right rear pants pocket.
5. The other officers involved in the operation were stationed in surrounding locations and were to provide back up assistance in apprehending anyone who may lift the money from the decoy's pocket.

*1309 6. At some time after 10:00 p.m., Officer Saladino, who was stationed in an alleyway by the decoy, observed the Defendant and a white female walking west on Kennedy Boulevard.
7... . it appeared that the Defendant approached the decoy and perhaps attempted to speak to him and then walked away from the decoy.
8. Approximately ten to fifteen minutes after that time, ... the Defendant and the white female return to the location of the decoy, the Defendant paused a short time and then lifted the money from the decoy's pocket without physically harming the decoy in any way.
... .
12... . none of the unsolved crimes occuring (sic) near this location involved the same modus operandi as the simulated situation created by the officers.
13... . the decoy operation was not set up to catch any particular individual.
14. Said officers ... had not observed the Defendant being engaged in any criminal activity prior to the time the money was taken from the decoy, had no knowledge that the Defendant had previously engaged in similar theft related crimes, had no knowledge of any criminal record for the Defendant and had no knowledge of any reputation of the Defendant for criminal activities.
After hearing arguments of counsel and determining there was no dispute as to any material facts, the trial court granted Cruz's motion on the authority of Casper.
The essential facts in Casper, as recited by the court, are that:
[T]he Jacksonville Sheriff's Office deployed a decoy... to apprehend potential robbers and thieves. The decoy was dressed in old clothes and doused himself with alcohol in order to appear to be under the influence of alcoholic beverages. He was in a semi-prone position on the sidewalk with several bills amounting to $150 protruding from his rear pant's pocket. The bills were clearly visible to passersby and were stapled together. If someone approached the decoy and talked to him, he was to pretend that he was unconscious and could not respond. Several robberies and purse snatchings had occurred in the general area of the site of the decoy. However, no robberies or thefts had occurred at this specific site to the best knowledge of the Sheriff's office. None of the unsolved robberies or thefts involved the same type of victim or modus operandi of this case. The Sheriff's office had no suspects or identifications of possible suspects for the thefts and robberies and did not employ the decoy to catch any particular individual... . the defendant walked along Duval Street and observed the decoy lying on the side of the street. The defendant walked by and then returned to the decoy, reaching down and removing the protruding money. He then walked on down the street, where the police arrested him. The police had not observed the defendant in the area prior to his arrest. They had no knowledge that he had previously engaged in similar theft-related crimes prior to this arrest.
417 So.2d at 264. On the basis of the above undisputed facts, the First District concluded that the defendant had been entrapped as a matter of law. The court held that under no reasonable construction could the state establish a prima facie case that the defendant showed a predisposition to commit the crime. We disagree.
In State v. Sokos, 426 So.2d 1044 (Fla. 2d DCA 1983), we recognized that the law relating to entrapment is correctly set forth in Casper, but we noted that we did not necessarily agree that those facts would constitute entrapment as a matter of law. In Sokos, Associate Judge Spicola, speaking for this court, noted that: "The entrapment defense `focuses on the intent or predisposition of the defendant to commit a crime.' State v. Brider, 386 So.2d 818, 820 (Fla. 2d DCA 1980) (emphasis supplied)." He explained that predisposition could be shown by establishing (1) prior criminal activity by the defendant; or (2) reasonable suspicion of his involvement in such activity; or (3) his ready acquiescence *1310 in the commission of the crime. See Story v. State, 355 So.2d 1213, 1215 (Fla. 4th DCA), cert. denied, 364 So.2d 893 (Fla. 1978).
There is no prohibition against the police using decoys to present the opportunity to those intending or willing to commit a crime. See State v. Rouse, 239 So.2d 79 (Fla. 4th DCA 1970); Koptyra v. State, 172 So.2d 628 (Fla. 2d DCA 1965). Here, the police provided an opportunity for Cruz to commit a crime, but there is no showing that he was approached or encouraged by the police to do so. Thus, there is a question of fact as to whether Cruz was predisposed to commit the offense.
Entrapment can exist as a matter of law, Smith v. State, 320 So.2d 420 (Fla. 2d DCA 1975), cert. denied, 334 So.2d 608 (Fla. 1976), but where, as here, a defendant's intent or state of mind (i.e., predisposition) is an issue, that issue should not be decided on a motion to dismiss under rule 3.190(c)(4). State v. Evans, 394 So.2d 1068 (Fla. 4th DCA 1981); State v. Rogers, 386 So.2d 278 (Fla. 2d DCA), petition for review denied, 392 So.2d 1378 (Fla. 1980); Cummings v. State, 378 So.2d 879 (Fla. 1st DCA 1979), cert. denied, 386 So.2d 635 (Fla. 1980); State v. J.T.S., 373 So.2d 418 (Fla. 2d DCA 1979); State v. West, 262 So.2d 457 (Fla. 4th DCA 1972).
As noted, the facts in this case are nearly identical to those in Casper. We disagree with our sister court that such facts constitute entrapment as a matter of law. Our decision, we acknowledge, conflicts with State v. Casper.
Accordingly, we reverse the order dismissing the information and remand for further proceedings.
HOBSON, A.C.J., and LEHAN, J., concur.
NOTES
[1] The trial judge was bound by the First District's decision in State v. Casper. Chapman v. Pinellas County, 423 So.2d 578 (Fla. 2d DCA 1982); State v. Hayes, 333 So.2d 51 (Fla. 4th DCA 1976).