431 So.2d 309 (1983)
STATE of Florida, Appellant,
v.
Thaddeus Tyrone HOLLIDAY, Alvin L. Townsend, and James W. Jackson, Appellees.
Nos. AO-294, AO-325 and AO-326.
District Court of Appeal of Florida, First District.
May 17, 1983.
Jim Smith, Atty. Gen., and Barbara Ann Butler, Asst. Atty. Gen., Jacksonville, for appellant.
Louis O. Frost, Jr., Public Defender, and James T. Miller, Asst. Public Defender, Jacksonville, for appellees.
PER CURIAM.
The State appeals from orders in three consolidated cases, entered on motions filed pursuant to Rule 3.190(c)(4), Fla.R.Crim.P., dismissing informations against defendants on a finding of entrapment as a matter of law. These appeals question the application of this Court's decision in State v. Casper, 417 So.2d 263 (Fla. 1st DCA, 1982), cert. den., 418 So.2d 1280 (Fla. 1982), especially in light of the refusal by our sister court to follow that decision in State v. Sokos, 426 So.2d 1044 (Fla. 2d DCA, 1983) and State v. Cruz, 426 So.2d 1308 (Fla. 2d DCA, 1983). Each case involved use of a "decoy operation," and the undisputed facts in all are substantially similar.
Holliday (Case No. AO-294): On April 28, 1981, the Jacksonville sheriff's office, pursuant to a Special Investigation Section operation, deployed a decoy on North Main Street in Jacksonville for the purpose of investigating criminal activity involving potential robberies and thefts. Several robberies and purse snatchings had occurred in this general area. The decoy wore old clothes, doused himself with alcohol to appear intoxicated, and lay in a semi-prone position on the sidewalk. As directed by his superiors, the decoy had placed $150 in bills in his rear pants pocket so as to be clearly visible to passersby and pretended to be unconscious. As directed, he was unresponsive to any physical or verbal acts toward him. Holliday walked by the decoy and observed him. He then walked back and forth by the decoy several times more, and *310 finally reached down and took the exposed money. Holliday then ran away, but was apprehended by police a short distance down the street. As the police approached, he threw the money on the ground and admitted having taken it because he was broke. After Holliday's arrest, several other persons took the "bait" offered by the decoy and were arrested. The police had no knowledge that Holliday had previously engaged in similar theft-related crimes and were not specifically looking to arrest Holliday for any suspected thefts. Several robberies and thefts had occurred in this area, however, involving suspects matching Holliday's general description and involving similar victims and modus operandi. Statistics on the decoy operation kept by the sheriff's office indicated that more than 50% of passerby contact with the decoys did not result in theft or robbery, but that most persons attempted to assist the decoy and help him retain his money.
Townsend (Case No. AO-325): The decoy operation resulting in Townsend's arrest occurred on October 16, 1981, near the same area, and involved a factual situation similar to Holliday, with the following slight differences. This time, the decoy did not douse himself with alcohol or appear to be intoxicated, and the money was not stapled together. Townsend nevertheless took all of the bills and walked away. He admitted to taking the money when arrested, but did not say why. Townsend had been arrested in August 1979 for burglary, but the State dropped the case on September 6, 1979, and Townsend was not suspected of thefts involving this modus operandi.
Jackson (Case No. AO-326): This decoy operation also occurred on October 16, 1981, in the same general location. The factual situation was similar to that involving Holliday, with the differences noted in the Townsend case. Jackson, however, had no prior arrests.
The three cases were carried on the trial court's calendar awaiting decision in State v. Casper, supra. The trial court granted the motions to dismiss on the authority of that decision.
On this appeal, the state argues that sufficient material differences exist between Casper and the cases under consideration to make Casper distinguishable and, thus, not controlling. We disagree. The controlling facts and circumstances in these cases do not materially differ from those upon which the court in Casper held as follows:
The State may demonstrate predisposition by proof of the defendant's prior criminal activities, his reputation for such activities, reasonable suspicion of his involvement in such activity, or his ready acquiescence in the commission of the crime. Story v. State, 355 So.2d 1213 (Fla. 4th DCA 1978). Moreover, evidence of prior unlawful acts, similar to the one with which the defendant is charged, is ordinarily admissible to rebut a defense of entrapment. See, e.g., Drayton v. State, 292 So.2d 395 (Fla. 3rd DCA 1974), cert. denied 300 So.2d 900 (Fla. 1974); Marion v. State, 287 So.2d 419 (Fla. 4th DCA 1974), cert. denied, 294 So.2d 91 (Fla. 1974). Upon this record, we are unable to find any evidence which would tend to show predisposition so as to defeat a motion to dismiss under Rule 3.190(c)(4), and the State did not traverse the facts as stated in defendant's motion. There is no evidence of any prior conduct of the defendant that would have shown predisposition. There is no evidence that he was engaging in criminal activity before he took the money from the decoy. See Dupuy [v. State, 141 So.2d 825 (Fla. 3rd DCA 1962)], supra. No ready acquiescence is shown; on the contrary, the defendant's acts, as stated in the motion, demonstrate only that he succumbed to temptation. The record, as such, reveals that the decoy did not detect or discover, nor could he reasonably be intended to discover, the type of crime the police were attempting to prevent by the use of the decoy, i.e., robberies and purse snatchings. Indeed, lifting some money protruding from the pocket of a seemingly unconscious, drunken bum is just not sufficiently similar to either robbery or *311 purse snatchings. Upon these facts, the decoy simply provided the opportunity to commit a crime to anyone who succumbed to the lure of the bait. Accordingly, we uphold the trial court's ruling that, as a matter of law, the defendant was entrapped. In doing so, we do not wish to proscribe any use of the police decoy procedure. We hold only that, where the defense of entrapment is raised, the State must demonstrate [or, as in this case, allege] facts tending to show a predisposition on the accused's part to commit the crime. Absent such a showing or allegation, as the case may be, we will have no alternative but to conclude that the accused's entrapment defense has merit and prevents the conviction for the offense. (417 So.2d at 265)
The State also argues that, unlike Casper, here it filed not only a demurrer, but also a traverse which specifically denied certain facts alleged in the motions, and alleged additional material facts which the State contended were in dispute. The State relies on State v. J.T.S., 373 So.2d 418 (Fla. 2d DCA 1979) and other similar decisions for the proposition that once a traverse specifically denying material facts is filed, automatic denial of the motion is required. In this case, however, with the approval of the trial court, the State stipulated to the defendants' adoption, as part of their motions to dismiss, of all evidentiary facts alleged in the State's traverse and denial. As a result, no evidentiary facts remained in dispute, and the issue left for decision was whether predisposition to commit the crime was sufficiently shown by the evidence to raise a jury question or should be decided against the State as a matter of law under Casper. We see nothing improper in this procedure. A traverse by the State, in order to be effective, must constitute a good faith dispute of material facts. Cf., Fox v. State, 384 So.2d 226 (Fla. 3d DCA 1980); Ellis v. State, 346 So.2d 1044 (Fla. 1st DCA 1977); State v. Kemp, 305 So.2d 833 (Fla. 3d DCA 1975). In stipulating to the amendment of defendant's motions, the State agreed it had no good faith dispute with the facts as so amended.
Finally, the State asks that we limit or recede from the holding in Casper and reverse the orders below in view of the decisions by the Second District Court of Appeal in State v. Sokos, supra, and State v. Cruz, supra. We recognize that those decisions, being based on substantially similar factual situations, refused to follow Casper on the premise that intent or state of mind concerning predisposition is not an issue to be decided as a matter of law on motion to dismiss under Rule 3.190(c)(4). While this panel of the Court has some doubt as to the propriety of disposing of this issue on a Rule 3.190(c)(4) motion, nevertheless we are constrained to follow Casper. The orders appealed are affirmed.
In view of the apparent widespread use of the decoy operations involved in these cases by law enforcement agencies around the state of Florida, and the acknowledged conflict between decisions, we certify to the Supreme Court, pursuant to Article V, Section 3(b)(4), that this decision is in direct conflict with the decisions of the District Court of Appeal, Second District, in State v. Sokos, 426 So.2d 1044 (Fla. 2d DCA, 1983) and State v. Cruz, 426 So.2d 1308 (Fla. 2d DCA, 1983).
BOOTH, LARRY G. SMITH and ZEHMER, JJ., concur.