465 So.2d 516 (1985)
Pedro A. CRUZ, Petitioner,
v.
STATE of Florida, Respondent.
No. 63451.
Supreme Court of Florida.
March 7, 1985.
*517 Jerry Hill, Public Defender; and Robert F. Moeller, Bartow, and Douglas S. Connor, Tampa, Asst. Public Defenders, Tenth Judicial Circuit, for petitioner.
Jim Smith, Atty. Gen. and M. Ann Garrison, Asst. Atty. Gen., Tampa, for respondent.
Louis O. Frost, Jr., Public Defender and James Miller, Asst. Public Defender, Fourth Judicial Circuit, Jacksonville, amicus curiae.
EHRLICH, Justice.
This case is before us on appeal from a decision of the Second District Court of Appeal, State v. Cruz, 426 So.2d 1308 (Fla. 2d DCA 1983). The decision directly and expressly conflicts with State v. Casper, 417 So.2d 263 (Fla. 1st DCA), review denied, 418 So.2d 1280 (Fla. 1982). We take jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution. We disapprove the district court's decision.
Tampa police undertook a decoy operation in a high-crime area. An officer posed as an inebriated indigent, smelling of alcohol and pretending to drink wine from a bottle. The officer leaned against a building near an alleyway, his face to the wall. Plainly displayed from a rear pants pocket was $150 in currency, paper-clipped together. Defendant Cruz and a woman happened upon the scene as passersby some time after 10 P.M. Cruz approached the decoy officer, may have attempted to say something to him, then continued on his way. Ten to fifteen minutes later, the defendant and his companion returned to the scene and Cruz took the money from the decoy's pocket without harming him in any way. Officers then arrested Cruz as he walked from the scene. The decoy situation did not involve the same modus operandi as any of the unsolved crimes which had occurred in the area. Police were not seeking a particular individual, nor were they aware of any prior criminal acts by the defendant.
Cruz was charged by information with grand theft. Pursuant to Florida Rule of Criminal Procedure 3.190(c)(4), Cruz moved to dismiss the information, arguing that the arrest constituted entrapment as a matter of law. The trial court granted the motion to dismiss on the authority of State v. Casper, 417 So.2d 263 (Fla. 1st DCA), review denied, 418 So.2d 1280 (Fla. 1982). On appeal, the Second District Court of Appeal reversed, acknowledging its decision was in conflict with Casper.
The entrapment defense arises from a recognition that sometimes police activity will induce an otherwise innocent individual to commit the criminal act the police activity seeks to produce. The United States Supreme Court has addressed the issue in four principal cases. Hampton v. United States, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). The Third *518 Circuit Court of Appeal offers a clear discussion of the historical development of the defense in the Supreme Court:
In Sorrells v. United States, where the Court first recognized the defense of entrapment, the Court held the defendant was entitled to have the jury consider whether his acts of possessing and selling one-half gallon of whiskey in violation of the National Prohibition Act were instigated by the prohibition agent who implanted in the "mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that [Government officials] may prosecute." 287 U.S. at 442, 53 S.Ct. at 212. The nature of the defense was outlined more fully when the Court next considered the defense a quarter of a century later in Sherman v. United States. Chief Justice Warren, writing for the majority of the Court, stated that "[t]o determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." 356 U.S. at 372, 78 S.Ct. at 820. In concluding that entrapment had been established as a matter of law, the Court determined from the undisputed testimony of the prosecution's witnesses that the defendant was induced to sell narcotics by the government informer and that he was not predisposed, i.e., that he engaged in conduct he would not otherwise have attempted. The Court noted, "Entrapment occurs only when the criminal conduct was `the product of the creative activity' of law-enforcement officials." Id. (emphasis in original).
In United States v. Russell, the Court expressly disapproved of the decisions of the lower federal courts which had expanded the entrapment defense beyond the Court's opinions in Sorrells and Sherman. Instead, the Court reiterated that the defense was not of constitutional dimension, and reaffirmed its prior opinions that established that entrapment is a "relatively limited defense", 411 U.S. at 435, 93 S.Ct. at 1644, which cannot be used by a predisposed defendant. Most recently, in Hampton v. United States, a majority of the Court, in two separate opinions, upheld defendant's conviction arising from his sales of heroin which had allegedly been procured from a government informant, reaffirming once again the unavailability of the entrapment defense to a predisposed defendant.
United States v. Jannotti, 673 F.2d 578, 596-97 (3d Cir.), cert. denied, 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982).
The entrapment defense thus normally focuses on the predisposition of the defendant. We adopted this view in State v. Dickinson, 370 So.2d 762 (Fla. 1979). The First District, in State v. Casper, 417 So.2d 263 (Fla. 1st DCA 1982), focused on predisposition when it found the "drunken bum" decoy at issue here to constitute entrapment as a matter of law. In Casper, Jacksonville police set up a decoy situation legally indistinguishable from the scenario in this case. The Casper court held that the state must prove the defendant was predisposed to steal from the decoy and that predisposition can be found under four circumstances: (1) the defendant has prior convictions for similar crimes; (2) the defendant has a reputation for committing similar crimes; (3) police have a reasonable suspicion the defendant was engaged in similar crimes; or (4) the defendant showed ready acquiescence to commit the crime suggested by police. Story v. State, 355 So.2d 1213 (Fla. 4th DCA), cert. denied, 364 So.2d 893 (1978). The Casper court found no evidence of the first two elements in that case. The third element is irrelevant in the type of random expedition at issue here. The question thus boiled down to whether Casper "readily acquiesced" to the criminal scenario. The Casper court found that an otherwise unpredisposed passerby who chose to take the money did not acquiesce, but "succumbed to temptation... . to the lure of the bait." 417 So.2d at 265. The Casper court therefore distinguished between "succumbing to temptation" and "readily acquiescing," and found *519 that this is a question of law: where the trial judge finds the defendant succumbed to temptation, the matter shall not be put to a jury.
The Second District, in the case now before us, rejected this position. The Cruz court found that such a judgment is one for the jury to make. "[W]here, as here, a defendant's intent or state of mind (i.e., predisposition) is an issue, that issue should not be decided on a motion to dismiss... ." 426 So.2d at 1310. Petitioner would have this court hold that where the only evidence of predisposition is the commission of the crime the police scenario was designed to elicit, there is an insufficient showing of predisposition, as a matter of law. We do not agree.
We agree with the Second District that the question of predisposition will always be a question of fact for the jury. However, we also believe that the First District's concern for entrapment scenarios in which the innocent will succumb to temptation is well founded. To protect against such abuse, we turn to another aspect of entrapment.
Entrapment is a potentially dangerous tool given to police to fight crime. "Society is at war with the criminal classes, and courts have uniformly held that in waging this warfare the forces of prevention and detection may use traps, decoys, and deception to obtain evidence of crime." Sorrells v. United States, 287 U.S. 435, 453-54, 53 S.Ct. 210, 216-17 (separate opinion of Roberts, J.). "The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal conspiracy, or other offenses, and thus to disclose the would-be violators of the law. A different question is presented when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." Id. at 441-42, 53 S.Ct. at 212-13 (opinion of the Court). "Such a gross abuse of authority given for the purpose of detecting and punishing crime, and not for the making of criminals, deserves the severist condemnation, but the question whether it precludes prosecution or affords a ground of defense, and, if so, upon what theory, has given rise to conflicting opinions." Id. at 441, 53 S.Ct. at 212. These words of the United State Supreme Court, in its seminal Sorrells decision, outline the basis on which the entrapment practices of police are seen as a necessary evil but an evil to be controlled. The Sorrells Court concluded that the defense of entrapment protected against such abuse.[1]
The entrapment defense adopted in Sorrells, focusing on the predisposition of *520 the defendant, is termed the subjective view of entrapment. However, beginning with Justice Roberts' concurrence in Sorrells, a minority of the United States Supreme Court has favored what is termed the objective view. This view was well expressed by Justice Franfurter, in Sherman v. United States:
The crucial question, not easy of answer, to which the court must direct itself is whether the police conduct revealed in the particular case falls below standards, to which common feelings respond, for the proper use of governmental power... .
... [A] test that looks to the character and predisposition of the defendant rather than the conduct of the police loses sight of the underlying reason for the defense of entrapment. No matter what the defendant's past record and present inclinations to criminality, or the depths to which he has sunk in the estimation of society, certain police conduct to ensnare him into further crime is not to be tolerated by an advanced society... . Permissible police activity does not vary according to the particular defendant concerned; surely if two suspects have been solicited at the same time in the same manner, one should not go to jail simply because he has been convicted before and is said to have a criminal disposition. No more does it vary according to the suspicion, reasonable or unreasonable, of the police concerning the defendant's activities. Appeals to sympathy, friendship, the possibility of exhorbitant gain, and so forth, can no more be tolerated when directed against a past offender than against an ordinary law-abiding citizen. A contrary view runs afoul of fundamental principles of equality under law, and would espouse the notion that when dealing with the criminal classes anything goes. The possibility that no matter what his past crimes and general disposition the defendant might not have committed the particular crime unless confronted with inordinate inducements, must not be ignored. Past crimes do not forever outlaw the criminal and open him to police practices, aimed at securing his repeated conviction, from which the ordinary citizen is protected.
356 U.S. at 382-83, 78 S.Ct. at 825-26 (Frankfurter, J., concurring in the result).
The subjective view recognizes that innocent, unpredisposed, persons will sometimes be ensnared by otherwise permissible police behavior. However, there are times when police resort to impermissible techniques. In those cases, the subjective view allows conviction of predisposed defendants. The objective view requires that all persons so ensnared be released.[2]
Although the United States Supreme Court implies the objective and subjective views of entrapment are mutually exclusive, we find that they are not. The objective view is a statement of judicially cognizable considerations worthy of being given as much weight as the subjective view. This court has already provided such protection in a civil injunction case. State investigators hired two informants to solicit dental work from a dental technician not licensed to perform the work. Justice Terrell wrote:
I do not think this court should sanction such apostasy from approved procedure. It is contrary to law and public policy for an officer or member of an administrative board to induce the commission of a *521 wrong or a crime for the purpose of securing a pretext to punish it... .
... All the evidence in this case was induced for pay and if given full face value, it leaves one in doubt whether defendant was doing the work of a dentist or a dental technician. In most cases due process and fair trial turn on procedure. I can think of nothing more disastrous to fair trial or more insolent to the safeguards with which it is protected, than a conviction secured solely on deliberately purchased evidence.
Peters v. Brown, 55 So.2d 334, 336 (Fla. 1951).
We do not foresee a problem in providing two independent methods of protection in entrapment cases. The New Jersey Supreme Court has found that the two tests of entrapment can coexist:
In articulating [the entrapment doctrine], our Court has adopted two standards respecting entrapment. The traditional or subjective standard defines entrapment as law enforcement conduct which implants in the mind of an innocent person the disposition to commit the alleged crime, and hence induces its commission... . Under this traditional formulation, the defense of entrapment is limited to those defendants who were not predisposed to commit the crime induced by government actions.
In recent years, however, this Court has fashioned a second, independent standard for assessing entrapment. It recognizes that when official conduct inducing crime is so egregious as to impugn the integrity of a court that permits a conviction, the predisposition of the defendant becomes irrelevant. .. . This Court recently explained in Talbot [State v. Talbot, 71 N.J. 160, 167-68, 364 A.2d 9, 13 (1976)]:
[A]s the part played by the State in the criminal activity increases, the importance of the factor of defendant's criminal intent decreases, until finally a point may be reached where the methods [employed] by the state to obtain a conviction cannot be countenanced, even though a defendant's predisposition is shown. Whether the police activity has overstepped the bounds of permissible conduct is a question to be decided by the trial court rather than the jury.
State v. Molnar, 81 N.J. 475, 484, 410 A.2d 37, 41 (1980).[3]
We find, like the New Jersey court, that the subjective and objective entrapment doctrines can coexist. The subjective test is normally a jury question. The subjective test is a matter of law for the trial court to decide.
The effect of a threshold objective test is to require the state to establish initially whether "police conduct revealed in the particular case falls below standards, to which common feelings respond, for the proper use of governmental power." Sherman, 356 U.S. at 382, 78 S.Ct. at 825 (Frankfurter, J., concurring in the result). Once the state has established the validity of the police activity, the question remains whether "the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." Sorrells, 287 U.S. at 442, 53 S.Ct. at 212 (1932). This question is answered by deciding whether the defendant was predisposed, and is properly for the jury to decide. In other words, the court must first decide *522 whether the police have cast their nets in permissible waters, and, if so, the jury must decide whether the particular defendant was one of the guilty the police may permissibly ensnare.
To guide the trial courts, we propound the following threshhold test of an entrapment defense: Entrapment has not occurred as a matter of law where police activity (1) has as its end the interruption of a specific ongoing criminal activity; and (2) utilizes means reasonably tailored to apprehend those involved in the ongoing criminal activity.
The first prong of this test addresses the problem of police "virtue testing," that is, police activity seeking to prosecute crime where no such crime exists but for the police activity engendering the crime. As Justice Roberts wrote in his separate opinion in Sorrells, "Society is at war with the criminal classes," 287 U.S. at 453-54, 53 S.Ct. at 217. Police must fight this war, not engage in the manufacture of new hostilities.
The second prong of the threshold test addresses the problem of inappropriate techniques. Considerations in deciding whether police activity is permissible under this prong include whether a government agent "induces or encourages another person to engage in conduct constituting such offense by either: (a) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or (b) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it." Model Penal Code § 2.13 (1962).[4]
Applying this test to the case before us, we find that the drunken bum decoy operation fails. In Cruz's motion to dismiss, one of the undisputed facts was that "none of the unsolved crimes occuring [sic] near this location involved the same modus operandi as the simulated situation created by the officers." Cruz, 426 So.2d at 1309. The record thus implies police were apparently attempting to interrupt some kind of ongoing criminal activity. However, the record does not show what specific activity was targeted. This lack of focus is sufficient for the scenario to fail the first prong of the test. However, even if the police were seeking to catch persons who had been "rolling" drunks in the area, the criminal scenario here, with $150 (paper-clipped to ensure more than $100 was taken, making the offense a felony) enticingly protruding from the back pocket of a person seemingly incapable of noticing its removal, carries with it the "substantial risk that such an offense will be committed by persons other than those who are ready to commit it." Model Penal Code § 2.13. This sufficiently addresses the Casper court's proper recognition that entrapment has occurred where "the decoy simply provided the opportunity to commit a crime to anyone who succumbed to the lure of the *523 bait." 417 So.2d at 265. This test also recognizes, as the Cruz court did, that the considerations inherent in our threshhold test are not properly addressed in the context of the predisposition element of the second, subjective test.
For the reasons discussed, we hold that the police activity in the instant case constituted entrapment as a matter of law under the threshhold test adopted here. Accordingly, we quash the district court decision.
It is so ordered.
BOYD, C.J., and ADKINS, McDONALD and SHAW, JJ., concur.
OVERTON, Justice, specially concurring.
I fully concur with the majority opinion and, contrary to my dissenting colleague, I find that it is totally consistent with our opinion in State v. Dickinson, 370 So.2d 762 (Fla. 1979), and the United States Supreme Court cases of Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), and United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). In my view, it is clear that the majority opinion does not depart from the "great weight of judicial authority in the United States." Further, it should be emphasized that in appropriate circumstances the issue of predisposition may be disposed of as a matter of law on a motion to dismiss. The United States Supreme Court so held in Sherman, in which it determined that predisposition did not exist as a matter of law and concluded that there had been entrapment.
ALDERMAN, Justice, dissenting.
I would approve the decision of the Second District holding that where, as in the present case, a defendant's intent or state of mind, i.e., his predisposition to commit a crime, is an issue, that issue cannot be decided on a motion to dismiss. I disagree with this Court's adoption of a threshhold objective test for entrapment, and I disagree that the police activity in the present case constituted entrapment as a matter of law.
The majority should adhere to our decision in State v. Dickinson, 370 So.2d 762 (Fla. 1979), wherein we explained that the essential element of the defense of entrapment is the absence of a predisposition of the defendant to commit the offense. The appropriate test for entrapment is a subjective test. In Dickinson, we upheld the constitutionality of section 812.028(4), Florida Statutes (1977), which provided:
It shall not constitute a defense to a prosecution for any violation of the provisions of ss. 812.012-812.037 that:
... .
(4) A law enforcement officer solicited a person predisposed to engage in conduct in violation of any provision of ss. 812.012-812.037 in order to gain evidence against that person, provided such solicitation would not induce an ordinary law-abiding person to violate any provision of ss. 812.012-812.037.
We said that this statute codifies entrapment as it now exists and held that there is clearly no constitutional prohibition against a law enforcement officer providing the opportunity for a person who has the willingness and readiness to break the law. We quoted with approval the following holding of the Supreme Court of the United States in United States v. Russell, 411 U.S. 423, 435-46, 93 S.Ct. 1637, 1644-50, 36 L.Ed.2d 366 (1973):

Sorrells and Sherman both recognize "that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution... ." Nor will the mere fact of deceit defeat a prosecution ... for there are circumstances when the use of deceit is the only practicable law enforcement technique available. It is only when the Government's deception actually implants the criminal design in the mind of *524 the defendant that the defense of entrapment comes into play (citations omitted).
State v. Dickinson, 370 So.2d at 763. The thrust of the entrapment defense in Florida has been held to focus upon and should continue to focus upon the intent or predisposition to commit the crime. In Dickinson, we said that section 812.028(4) preserves the line between the predisposed criminal and the unwary innocent. Section 812.028(4) has not been amended since our decision in Dickinson.
We have not been asked by the parties to nor should we gratuitously adopt a new standard for entrapment. There are no compelling reasons why we should depart from long-established precedents. The new standard adopted by the majority has the effect of changing the meaning of this defense. It is not constitutionally mandated and is contrary to the standard expressly recognized by the Florida Legislature and by the great weight of judicial authority in the United States. We should not expand the concept of entrapment beyond that explained in Dickinson and codified by statute.
I would approve the decision of the Second District.
NOTES
[1] The Supreme Court has subsequently come to realize that the entrapment defense may not be the only protection against police abuse in this context. In United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) and Hampton v. United States, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), the Court recognized that "we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." 411 U.S. at 431-32, 93 S.Ct. at 1642-43 (quoted at 425 U.S. at 489, 96 S.Ct. at 1649, and citing Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (pumping defendant's stomach to retrieve swallowed contraband shocks the judicial conscience)).

In both Russell and Hampton the Court found no such due process violation. However, at least two United States circuit courts have found due process violations in the entrapment context. Greene v. United States, 454 F.2d 783 (9th Cir.1971); United States v. Twigg, 588 F.2d 373 (3d Cir.1978); cf. United States v. Beverly, 723 F.2d 11 (3d Cir.1983). At least five other circuits have recognized the possibility of due process violations, but have rejected finding such violations in the fact situations of the particular cases. United States v. Garrett, 716 F.2d 257 (5th Cir.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984); United States v. Perez, 600 F.2d 782 (10th Cir.1979); United States v. Leja, 563 F.2d 244 (6th Cir.1977), cert. denied, 434 U.S. 1074, 98 S.Ct. 1263, 55 L.Ed.2d 780 (1978); United States v. Quinn, 543 F.2d 640 (8th Cir.1976); United States v. Swiderski, 539 F.2d 854 (2d Cir.1976).
[2] While the objective view parallels a due process analysis, it is not founded on constitutional principles. The justices of the United States Supreme Court who have favored the objective view have found that the court must "protect itself and the government from such prostitution of the criminal law. The violation of the principles of justice by the entrapment of the unwary into crime should be dealt with by the court no matter by whom or at what stage of the proceedings the facts are brought to its attention." Sorrells, 287 U.S. at 457, 53 S.Ct. at 218 (Roberts, J., in a separate opinion). Justice Frankfurter also found that a judge's decision using the objective view would offer significant guidance for future official conduct, while a jury verdict offers no such guidance. Sherman, 356 U.S. at 385, 78 S.Ct. at 827 (Frankfurter, J., concurring in the result).
[3] The Molnar court held that the objective test was to be administered by the trial court, as we hold here. Subsequent to its Molnar decision, the New Jersey court held that statutory law had superseded the common law, placing the decision on both the subjective and objective aspects of entrapment in the hands of the trier of fact. State v. Rockholt, 96 N.J. 570, 476 A.2d 1236 (1984). Even though the New Jersey court concluded that its common law paradigm had been supplanted, it noted that there may still be situations where the government conduct is so outrageous that constitutional due process requires dismissal. See discussion at note 1, supra. There is no parallel to the New Jersey legislative action in Florida, and we conclude that the policy considerations of the Molnar decision remain valid in this case.
[4] We note that, under this threshhold test, considerations which normally might not be recognized under the subjective test may be cognizable. In United States v. Jannotti, 673 F.2d 578, 596-97 (3d Cir.1982), one of the ABSCAM cases, the court addressed the question of whether the size of bribes offered to city officials could be found to negate predisposition as a matter of law. The Third Circuit questioned whether the strength of the inducement could ever negate predisposition, but found that the size of the bribes in that case were insufficient, even if the strength of the inducement were a factor. Under the threshhold test we adopt here, the strength of the inducement is certainly a significant factor, since there could be a "substantial risk that such an offense will be committed by persons other than those who are ready to commit it." While such a factor is thus cognizable, it does not always dictate a finding of entrapment as a matter of law, since, as the Third Circuit found in the context of its predisposition analysis, even substantial sums of money offered to city officials may be found to create no such substantial risk. Likewise, the relative "benignity" of the favor asked of the officials in Jannotti (defendants argued they only agreed to do that which they would have done anyway) was a question of fact for the jury in its determination of whether the defendants were predisposed, not a question of whether there was predisposition as a matter of law. Once such issues are addressed in the context of the threshhold test, the problems inherent in attempting to determine whether certain facts tend to show predisposition as a matter of law are resolved.

OVERTON, J., concurs specially with an opinion.
ALDERMAN, J., dissents with an opinion.