# STATE OF FLORIDA v CABRERA and SOCARRAS

## Case No. 84-6293 (02-Bloom)

Eleventh Judicial Circuit, Dade County

December 16, 1985

## APPEARANCES OF COUNSEL

**Office of the State Attorney** for plaintiff.

**Jerrell A. Breslin** for defendant.

**Diane V. Ward**, Assistant Public Defender, for defendant.

## OPINION OF THE COURT

PHILIP BLOOM, Circuit Judge.

THIS CAUSE having duly come on to be heard before this Honorable Court on October 16, 1985, pursuant to the Motions by defendants, Vicente Gomez Socarras and Alejandro Cabrera, to Dismiss for Governmental Misconduct and Entrapment As a Matter of Law and Supplement to Motion to Dismiss; and upon this Court having had the

opportunity to examine, review and analyze the contents of the defendants' motions, all exhibits, pleadings, documents and sworn depositions filed in the above-styled cause, applicable State and Federal law; and upon hearing argument and stipulation of counsel, including that the whereabouts of informant Orlando Gorra (or Gora) is not known and that the State cannot call him as a witness in this cause, and after allowing both the State and defense an opportunity to present any applicable testimony and/or evidence, and being otherwise fully advised in the premises, this Court hereby makes the following findings of fact and conclusions of law:

1. That the defendant, Alejandro Cabrera, and codefendant, Vicente Socarras, were charged in an information filed on April 5, 1984 with conspiracy to sell controlled substance and trafficking in cocaine in excess of 400 grams by selling, manufacturing or delivering cocaine in violation of Section 893.135 of the Florida Statutes.

2. On the 12th of October, 1985, Assistant Public Defender, Diane V. Ward, filed with this Court a Motion to Dismiss for Prosecutorial/Government Misconduct, Supplement to Motion to Dismiss and Supplement to Appendix. Said motions had attached numerous exhibits, citations and excerpts of sworn depositions. Codefendant, Cabrera, filed a Motion to Adopt the aforesaid motion on the 16th day of October, 1985, and in addition, filed a Sworn Motion to Dismiss for Prosecutorial Misconduct and Entrapment As a Matter of Law. Defendant Socarras incorporated by reference his Affidavit filed on December 20, 1984 with his Motion to Disclose Confidential Informant. The facts in said affidavit were again sworn to by the defendant in open Court on October 21, 1985.

3. That this Court, after motions of both defendants, hereby takes judicial notice of all previous judicial orders, excerpts of depositions, excerpts of in-camera hearings, agreements between the confidential informant and the Hialeah Police Department, the deposition of Orlando Gorra taken in the above-styled case on July 31, 1985, and all other items listed in the index to appendix filed in support of the Motion by defendant Socarras to Dismiss and supplements thereto. The Court, as a matter of judicial economy, recognizes after inquiry thereto and its familiarity with this and related proceedings, that whatever matters that were not judicially recognizable as a matter of public record could easily have been otherwise produced by counsel. Therefore, all matters contained in the index to appendix this Court considers as being before the Court on the instant motions.

4. This Court makes a finding of fact that defendant, Alejandro

106

Cabrera, has standing to raise the Motion to Dismiss for Prosecutorial Misconduct and Entrapment As a Matter of Law. Cabrera's standing is established by unrefuted sworn statements that Cabrera was personally and directly pressured by the confidential informant into participating in the delivery of the cocaine. This Court further finds that defendant Cabrera was present during pressures imposed upon codefendant Socarras by the confidential informant and further that additional pressures were communicated to defendant Cabrera by codefendant Socarras thereby establishing standing to complain of the governmental misconduct.

5. That the defendants, Socarras and Cabrera, were arrested and charged solely as a result of their contact with a confidential informant identified as Orlando Gorra. The arrests were the result of pressures initiated by Gorra on both defendants. Gorra was at all times relevant employed full-time as an agent of the Hialeah Police Department. The reasons for Gorra's zeal became apparent to this Court and is outlined below.

6. This case is concerned with informants and entrapment and their effect on the Constitutional and procedural rights of an accused. The use of informants by the police is sanctioned in law and is a necessary tool in the fight against crime by law enforcement authorities. In today's complex society every possible means of apprehending criminals should be permitted so long as individual rights are not impaired. However, difficulty exists in striking a balance in those instances where the informant, who is closely associated with the police or police activity (thereby constituting governmental conduct), may induce an innocent individual to commit a criminal act which that individual did not have a proclivity or predisposition to otherwise perform.

"Society is at war with the criminal classes, and courts have uniformly held that in waging this warfare the forces of prevention and detention may use traps, decoys and deception to obtain evidence of crime." Sorrells v. United States, 287 U.S. 435 at pp. 453-54.

Since the police are dealing with the criminal element, usually an informant by his very nature is of that element. An informant is not usually a priest, rabbi or nun. A defendant will complain that the informant is unworthy of belief and reliability. However, without the informant, many areas of crime could not be detected, uncovered or prosecuted, and therefore, informants may at the very least be a necessary law enforcement tool in today's world.

7. Specifically, this informant, Orlando Gorra, was employed full-

107

time with the Hialeah Police Department since either August, 1983 or January, 1984 with such employment and resulting compensation comprising and constituting the major, if not sole, portion of his income, support and maintenance for himself and his family. For a period of eight (8) months, from January, 1984 through August, 1984, Orlando Gorra initiated and worked approximately 26 cases for the Hialeah Police Department wherein the defendants in each instance according to Gorra initiated the approach or contact with Gorra to deal in illegal drugs; all of which cases resulted in the seizure of more than 20 kilograms of cocaine by the Hialeah Police Department.

8. Prior to becoming employed as an informant with the Hialeah Police Department, Gorra admitted he had never been approached by anyone to buy or sell drugs over a period of the previous five (5) years.

9. After accepting employment with the Hialeah Police Department, the majority, if not all, of the people that Gorra set up for arrest by the City of Hialeah Police Department were people he had previously known in Cuba. Mr. Gorra has indicated that each of these individuals was not sought out by him but instead approached him on the street. After reviewing the evidence in this case and the matters about which this Court takes judicial notice, this Court makes a specific finding of fact that this is not a truthful statement by Mr. Gorra and that this Court believes that Mr. Gorra in fact sought out most, if not all, of the individuals that were subsequently arrested in his "investigations."

10. Clearly, Mr. Gorra's employment and investigative "techniques" are motivated solely by financial greed. From January 28th, 1984 through July 26, 1984 as the records of the Hialeah Police Department reflect, Mr. Gorra was paid $13,600.00 as compensation for his services as an informant. Based on these figures, Mr. Gorra worked approximately one case per week with the Hialeah Police Department and received, on the average, $566.00 per week. These payments were always made in cash, and the amounts were determined on a contingency fee basis according to the amount of drugs and/or cash seized.

11. As Mr. Gorra himself has admitted, the more people that were arrested because of his activities and the more drugs seized, the more money he would receive.

12. Further, according to the sworn testimony of Sgt. Joseph Pugliese of the Hialeah Police Department, when Gorra participated in a "reverse sting" operation, Gorra received a fixed 10% of all monies received and forfeited as a direct result of his assistance. In a drug purchase situation, such as the one in the instant case, Gorra was paid on a contingency fee basis at the rate of $500.00 for every kilogram of

108

cocaine seized as a direct result of his "activities" that resulted in arrests.

13. According to sworn testimony provided by Pugliese and other officers of the Hialeah Police Department Narcotics Divisions, these payment plan schedules and contingency fee arrangements were discussed with or brought to the attention of Assistant State Attorneys in the Dade County State Attorney's Office who apparently, either directly or implicitly, approved and/or authorized such procedures.

14. This Court finds, that Orlando Gorra has a direct and/or implied obligation with the Hialeah Police Department and/or the State Attorney's Office to cooperate fully and testify, if necessary, in any and all criminal prosecutions resulting from his investigations in order to collect and continue to collect his contingency fees. It is noteworthy that Gorra preyed upon his friends from Cuba with the result that should Gorra testify in any one case, his ability to obtain money from the police would be at an end and since those persons preyed upon would no longer associate with Gorra. Based upon the records in several cases in the Circuit Court, Criminal Division, Dade County, when things "got hot" requiring Gorra's testimony, he (Gorra) absented himself. This Court heard testimony from Sgt. Hernandez of the Hialeah Police Department that Gorra made himself available at any time Hernandez wished for either in camera inquiry or for deposition. Hernandez indicated in open Court that he was responsible for providing Gorra and he would in fact provide Gorra when necessary.

15. This Court finds as fact that had Gorra refused to cooperate and provide the aforementioned statements and/or refused to testify at trial, that he would jeopardize and forfeit any monies already received as well as the payment of any outstanding or pending contingent fees.[1] In the instant case, both defendants Socarras and Cabrera have filed sworn motions raising the defense of entrapment and entrapment as a matter of law. Further, counsel for both defendants have stated as officers of the Court their intention to raise an entrapment defense.

16. This Court makes a finding of fact that it would be incumbent upon the confidential informant, Orlando Gorra, to testify in the instant case on behalf of the State of Florida in order to possibly negate or contradict any entrapment defense; and that Gorra is a necessary and indispensable witness for both the State and the defendants for such purposes.

---

[1] This finding was made by the Honorable Howard Gross in *State v. Nieves, et al.,* Case Number 84-6152B (Gross/Mastos). The Hon. Howard Gross' findings were subsequently borne out. Gorra has now disappeared from Dade County and any fees that are owing to him through the Hialeah Police Department will no longer be paid.

17. It is the law of this case, that the Hon. Richard Feder, found that Socarras had made out a prima facie case of entrapment in Socarras' Affidavit of facts attached to his instant Motion to Disclose the confidential informant, and adopted for Socarras' Motion to Dismiss. This shifts the burden to the State of Florida to negate the entrapment defense. The State admits that the only witness who could negate this entrapment defense is Orlando Gorra. Additionally, defendant, Alejandro Cabrera, has raised this defense in his Sworn Motion to Dismiss for Entrapment As a Matter of Law. This Court now finds a prima facie showing of entrapment also by defendant Cabrera and therefore Gorra would also be a necessary witness to rebut the prima facie showing of entrapment.

18. That the State of Florida admits that Orlando Gorra is the only person who could negate the defenses raised by both defendants and therefore this Court finds as fact that Orlando Gorra is a necessary and indispensable witness to the prosecution as to both defendants.

19. In light of the foregoing contingent fee payment schedule which invites corruption, abuse, perjury and criminal overreaching by informant Gorra, this Court finds it incredible to learn that Mr. Gorra has received absolutely no training whatsoever as a confidential informant by the Hialeah Police Department, or by any other governmental authority.

20. That this lack of supervision and training is compounded and amplified by the fact that Mr. Gorra does not speak the English language and came to this country as an undesirable ex-convict in the Mariel boat lift. From reviewing the documents available to this Court, this Court finds that Orlando Gorra's understanding of the American criminal justice system is nonexistent or childlike at best.

21. Knowing full well that they were employing a questionable informant at best, the Hialeah Police Department made no effort whatsoever to supervise, monitor or surveil any of Gorra's "law enforcement activities."

22. In addition to receiving no formal·training whatsoever, informant Gorra received no informal training. This Court heard live testimony from Det. Rogelio (Roger) Hernandez that he made an effort to explain the meaning of entrapment to informant Gorra. Not surprisingly, Gorra has stated in sworn deposition that he was never advised of the meaning of entrapment and does not know what entrapment is.

23. The Court therefore makes a finding of fact that at no time was Gorra ever advised as to the meaning, parameters and ramifications of entrapment, or of existing individual rights under the Constitution of

110

the United States or the State of Florida or of any judicial decisions relating thereto, or indeed even of the laws in the State of Florida relating to drug controlled substances.

24. The police of Hialeah when confronted with an individual who was expelled from another country's jail as an undesirable, armed the individual with a contingency payment plan, gave the individual no instructions on the rights of individuals in this country or the manner in which to conduct himself or to act and operate as an informant, and released that individual onto the streets of Dade County without any police or other supervision and/or control whatsoever. This Court has been advised that Orlando Gorra did not operate on any fixed work or time schedule and did not furnish written reports or memoranda of any kind as to any of his activities while working for the Hialeah Police Department.

25. Gorra followed his highly suspect but not surprisingly successful practice and modus operandi. In the instant case, Gorra repeatedly contacted both defendants Cabrera and Socarras (as he had done to so many of his other friends from Cuba) in an effort to get either of those two or anyone that they might know to provide cocaine for Gorra's "buyers."[2] Gorra met with both defendants on numerous occasions and applied whatever pressures he could to try to entice Socarras and Cabrera into seeking out cocaine to sell to an undercover agent.

26. In the instant case, both Socarras and Cabrera had no prior lawbreaking history, and the City of Hialeah Police Department candidly admits that neither was a suspect of any drug related activity or ongoing criminal activity prior to the time when Gorra brought the names of the defendants to the attention of the City of Hialeah Police Department.

27. Immediately upon being made aware of the names of the defendants and without inquiring as to the nature of the relationships between Gorra and the defendants, the City of Hialeah Police Department made immediate contact in an effort to seize cocaine. This practice of immediately contacting the individual whose name was provided by Gorra happened in the instant case on two occasions.

28. On February 28, 1984, the Narcotics Division of the Hialeah Police Department was advised by Gorra that Vicente Socarras could provide approximately one kilogram of cocaine to an undercover police agent.

29. On February 28, 1984, Det. Hernandez immediately sought out

---

[2] undercover detectives.

111

to effectuate a buy of the cocaine without making any inquiry whatsoever as to the nature or number of the contacts between Gorra and Socarras. Hernandez was advised of the quantity and the price of the narcotics by Gorra. Gorra was permitted to negotiate price, as well as quantity, without any supervision whatsoever.

30. This Court took testimony from Gorra at an in-camera hearing on January 30, 1985 wherein Gorra admitted that he had met with the defendant Socarras in Miami prior to February 28, 1984. It is apparent to this Court, and this Court makes a finding of fact, that there had to have been numerous meetings between Socarras and Gorra prior to the meeting with Hernandez.

31. On February 28, 1984, without making the aforementioned inquiry, Hernandez approached Socarras in an effort to purchase the cocaine; however, due to circumstances not germane to the issues in this Order, the transaction never took place.

32. It is undisputed that Gorra was not paid for his efforts in arranging the unsuccessful transaction of February 28, 1984 and that his payment was contingent upon closing the case by an arrest and seizure of cocaine.

33. The Court finds that this arrangement in and of itself is violative of due process in that it created a tremendous financial incentive for Gorra to continue to pressure the defendants to provide him with cocaine, especially when Gorra's first attempt had failed and he was not paid for his questionable efforts.

34. Between February 28th and March 16, 1984, the Hialeah Police Department made no effort whatsoever to monitor any contacts had between Gorra, Socarras and Cabrera and made no inquiry of Gorra as to any contacts that may have been made.

35. The frequency of these unsupervised and unreported contacts between Gorra and the defendants, and the contents of the conversations between Gorra and the defendants, was left exclusively up to Gorra with no other "evidence" or indication of any kind as to their nature or content.

36. Based on the aforementioned contingency fee agreement, as well as the lack of supervision and previous findings of other courts on Gorra's credibility and manner of operation, this Court accepts as fact the allegations made in both Socarras and Cabrera's Sworn Motion to Dismiss, in toto.

37. This Court makes a finding of fact based on Gorra's admissions and in-camera hearing of January 30, 1985 and testimony of Det.

Hernandez at the hearing on this Motion wherein he stated that he assumed that Gorra had met with the defendants, that Orlando Gorra unduly pressured both Socarras and Cabrera jointly and separately on numerous occasions after repeated denials to get involved by both defendants into providing cocaine for the transaction of March 16, 1984.

38. That the tactics employed by the informant in the instant case and those employed by the informant in *State v. Morrero*, 10 FLW 2317 (Fla. 3d DCA 1985), are almost identical. Although the length of time in which the defendants were hounded is shorter in the present case than in *Morrero*, this Court finds that point judicially insignificant. Here, as in *Morrero*, the informant was left to his own designs to effectuate an arrest. Here, as in *Morrero*, the police agencies made no inquiry whatsoever as to the number of or content of the contacts had between the informant and their targets. Here, as in *Morrero*, the police officers simply went out and made an arrest after the entire negotiation and transaction was set up by an unsupervised, unmonitored, untrained and unreliable informant.

39. This Court hereby finds as a matter of fact and law that the actions of the informant, Orlando Gorra, constitute entrapment as a matter of law as outlined by the Supreme Court in *State v. Cruz*, 465 So.2d 516 (1985), and the Third District Court of Appeal in *State v. Morrero, supra*. This Court additionally finds that the employment agreement between the Hialeah Police Department and Gorra was violative of the Florida Supreme Court's Opinion in *Glosson v. State*, 441 So.2d 1178 (Fla. 1st DCA 1983), 462 So.2d 1082 (Fla. 1985). As the Supreme Court said in *Glosson*:

> We can imagine few situations with more potential for abuse of a defendant's due process right. The informant here had an enormous financial incentive not only to make criminal cases, but also to color his testimony or even commit perjury in pursuit of the contingent fee. The due process right of all citizens require us to forbid criminal prosecutions based upon the testimony of vital state witnesses who have what amounts to a financial stake in criminal convictions. (at p. 1085)

This Court makes this finding of fact based upon Gorra's action, method of operation, lack of training, instructions, supervision, unreliable or incredible testimony in this case, as well as in others, and his cooperation and testimonial agreement either with the State of Florida or with the Hialeah Police Department. Further, Gorra's payments on a contingency basis are so intolerable, outrageous and fundamentally

unfair as to be violative of the defendants' due process rights under both the Florida and United States Constitutions.

40. This Court finds that based on the various contradictory statements Gorra has made under oath, that he is an unreliable, incredible and untruthful witness. This Court finds the present situation even more outrageous than those facts presented in *Glosson*. In *Glosson*, the informant at least was required to testify for the State and undergo the rigors of cross-examination. In the case, *sub judice*, Gorra was permitted to arrange an illegal transaction knowing he would, in all likelihood, never be held accountable for his activities. In light of Gorra's lack of veracity, training and supervision, this is an outrageous violation of the defendants' constitutional due process rights.

41. In addition to the foregoing, this Court finds a completely distinct and independent reason for dismissal of the instant charges against Cabrera and Socarras. As previously outlined, this Court finds that Orlando Gorra is an essential witness to the State of Florida as well as to both defendants to establish their entrapment defenses.

42. Orlando Gorra was never listed as a State's witness but was only revealed after great resistance by the State of Florida. Even after being revealed and deposed, Gorra never gave any address to either defendant. Further, the State refused to provide an address for Gorra and instead it assumed the responsibility for providing Gorra at trial.

43. Informant Gorra was personally served with a trial Subpoena by defense counsel on July 31, 1985 for the then pending trial date of September 9, 1985. Gorra failed to honor the Subpoena and failed to appear on September 9, 1985. Additionally, notwithstanding Gorra's representations in deposition that he would comply with service through either the State Attorney's office or Det. Hernandez, Gorra again failed to appear on the next trial date of October 21, 1985.

44. On October 1, 1985, this Court granted defendant's Motion to Compel Correct Address for Orlando Gorra based in part on this procedural history. At that time, the State of Florida candidly admitted that it had no knowledge of Orlando Gorra's current whereabouts. Further, Detective Hernandez, who was then Gorra's assigned chaperon, testified in open Court at the hearing of the aforesaid motions that he had no idea of Gorra's whereabouts.[3]

---

[3] The failure of the State to keep track of its informant Gorra is amplified by the fact that the State knew that Gorra was a crucial and essential witness, not only in this prosecution, but in other pending prosecutions, specifically, *State v. Miguel Carmona, et al.*, Case Number 85-2009, Dade County Circuit Court, Judge Snyder; *State v. Luis*

45. That the State of Florida was aware that Gorra had planned on leaving the jurisdiction on July 31, 1985. Gorra candidly stated in his deposition on July 31, 1985 that he intended to leave the jurisdiction and was unwilling or refused to state at deposition his planned new address. Therefore, the State of Florida was on notice that Gorra planned to leave and made absolutely no effort whatsoever to ascertain his new address or whereabouts, and made no effort to prevent him from leaving.[4]

46. Therefore, this Court finds that the confidential informant, as an agent of the police, arranged the arrest of the above defendants; that the confidential informant Gorra is a crucial, material and vital witness to the defense at trial, and this Court further finds that the State has failed to provide the defendants with information of the confidential informant's whereabouts or is unwilling or unable to provide said information. This Court further finds that the State of Florida is unwilling or unable to provide the confidential informant to the defense at the time of trial.

47. In light of the aforementioned findings of fact, this Court finds additional grounds to dismiss this case under the authority of *Aldazabal v. State*, 471 So.2d 639 (Fla. 3d DCA 1985), and *State v. Jones*, 247 So.2d 342 (Fla. 3d DCA 1971).

48. This Court finds that the conduct of Orlando Gorra in the instant case was as shocking and outrageous as that chastised by the Supreme Court of Florida in *Glosson, supra*, and *Cruz, supra*, and by the Third District Court of Appeal in *Morrero* and *Aldazabal, supra*.

Based on the foregoing, and upon the unquestionable belief that the actions and findings of fact that the actions of Orlando Gorra violated the constitutional due process rights of each of the defendants in the instant case, it is hereby

ORDERED AND ADJUDGED that defendants, Alejandro Cabrera and Vicente Socarras' Verified Motions to Dismiss the subject information is hereby GRANTED.

---

*vasquez*, Case Number 85-3877, Circuit Court, Judge Snyder; *State v. Forero, et al.*, Case Number 84-28283, Judge Shapiro.

[4] The Court also notes that the informant Gorra was escorted to the deposition of July 31, 1985 by Det. Hernandez. Hernandez also therefore had full knowledge of Gorra's intentions on leaving the jurisdiction and made no effort whatsoever to halt Gorra's leaving.