513 So.2d 1328 (1987)
William PEZZELLA, Appellant,
v.
The STATE of Florida, Appellee.
No. 84-750.
District Court of Appeal of Florida, Third District.
October 6, 1987.
Rehearing Denied November 9, 1987.
*1329 Bennett H. Brummer, Public Defender, and Robert Kalter, Sp. Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Richard L. Polin, Asst. Atty. Gen., and Jeri L. Weintraub, Certified Legal Intern, for appellee.
Before HENDRY, NESBITT and BASKIN, JJ.
HENDRY, Judge.
Defendant, William Pezzella, appeals his conviction and sentence for trafficking in methaqualone. Defendant contends that he was entrapped. For the reasons which follow, we reverse.
On July 10, 1983, Janine Hurd approached the North Miami Beach Police Department with information that William Pezzella was buying and selling quaaludes. Hurd also informed the police that a friend of hers had been murdered recently and she thought Pezzella's father had information concerning the murder. Hurd believed that if Pezzella were arrested, his father would be placed in a difficult financial situation and thus might cooperate with the homicide investigation. Prior to Hurd's disclosure, the police had no knowledge that Pezzella was involved in drug trafficking. Nonetheless, the officers decided to act on this information and proceeded to sell quaaludes to Pezzella.
Hurd, following police instructions, called Pezzella and ask if he would be interested in purchasing quaaludes. One of the officers, posing as a seller, talked to Pezzella and arranged to sell Pezzella a small quantity of quaaludes as a sample. Ten pharmaceutical quaaludes were then sold to Pezzella for $25.00, a price well below the street value. Two hours later Hurd called Pezzella to ask whether he would be interested in buying a larger quantity. Pezzella, however, was under the influence of the quaaludes and was incapable of consummating a transaction. The next day Pezzella agreed to purchase 1000 quaaludes for $1000.00, but only after Hurd told Pezzella she would sell 900 of the quaaludes for him and allow him to keep 100 for himself. Hurd knew Pezzella used quaaludes regularly and thus would be willing to go along with this deal. Shortly after Pezzella purchased the 1000 quaaludes, he was arrested and charged with trafficking. Hurd, for her role, was paid by the police.
Prior to trial, Pezzella filed a motion to dismiss, claiming his arrest constituted entrapment as a matter of law. In response, the state filed a traverse and the court denied defendant's motion. At the close of the state's case, defendant moved for a judgment of acquittal, again based on entrapment. The motion was denied and defendant was convicted of trafficking. On February 28, 1984, Pezzella was sentenced to ten years imprisonment with a three year mandatory minimum.
In Cruz v. State, 465 So.2d 516 (Fla. 1985), the supreme court adopted an objective entrapment test to be used before the traditional subjective test is applied. The threshold objective test examines whether "police conduct revealed in the particular case falls below standards, to which common feelings respond, for the proper use of governmental power... ." Cruz, 465 So.2d at 520, quoting from Sherman v. United States, 356 U.S. 369, 382, 78 S.Ct. 810, 825, 2 L.Ed.2d 848, 856 (1958). As a guide to the courts in applying the objective test, the Cruz court provided the following analysis. "Entrapment has not occurred as a matter of law where police activity (1) has as its end the interruption of a specific ongoing criminal activity; and (2) utilizes means reasonably tailored to apprehend *1330 those involved in the ongoing criminal activity." Cruz, 465 So.2d at 522.
Applying the first prong of the objective test to the case under review, we conclude that the police activity in question did not have as its end the interruption of a specific ongoing criminal activity. Instead, the officers, with the cooperation of an informant, manufactured a crime by seeking out the defendant and persuading him to buy quaaludes supplied by the police. Prior to this episode, the police had no information that the defendant had been involved in any illicit drug activity. In Marrero v. State, 493 So.2d 463 (Fla. 3d DCA 1985), review denied, 488 So.2d 831 (Fla. 1986), this court was presented with a similar situation in that an informant came to the police with information that the defendant was involved in drug trafficking. The police acknowledged they had no prior information on the individual or his involvement in drug trafficking. Nonetheless, undercover officers sought out the defendant and supplied him with marijuana which he was to sell. In both Marrero and the instant case, the police were not aware of any criminal activity prior to their actions, thus their actions could not have had as their end the interruption of ongoing criminal activity. Moreover, by supplying the drugs involved in the transaction, the police did not "facilitate discovery or suppression of ongoing illicit traffic in drugs." Lusby v. State, 507 So.2d 611, 612 (Fla. 4th DCA 1987) (quoting United States v. West, 511 F.2d 1083, 1085 (3d Cir.1975)).[1]
The second prong of the objective test evaluates the type of activity the police utilized. If the police employ "methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit [the offense,]" the activity used is impermissible. Cruz, 465 So.2d at 522 (quoting the Model Penal Code § 2.13 (1962)).
In the case under review, the police used an informant who had improper motives for apprehending the defendant. More importantly, however, the informant knew the defendant was a quaalude addict and used this information to induce the defendant's participation in the drug deal. First the defendant was provided with pharmaceutical quaaludes to "taste"; later the informant persuaded the defendant to buy the 1000 quaaludes because he would be allowed to keep 100 for himself. Enticing a drug addict to participate in an illicit drug sale by promising him drugs for his personal use is reprehensible conduct which should not be tolerated. See Sherman v. U.S., 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); See also Smith v. State, 320 So.2d 420, 424 (Fla. 2d DCA 1975) (McNulty, J., dissenting).
For the reasons discussed above, we hold that the actions of the police constituted entrapment as a matter of law under the threshold objective test. Consequently, the defendant was entitled to a judgment of acquittal. Accordingly, we reverse the conviction and sentence under review.
Reversed.
NOTES
[1] A few federal cases which have employed the objective test have gone so far as to hold that when the police or government have supplied the drugs the defendant is convicted of selling, entrapment exists as a matter of law. See United States v. West, 511 F.2d 1083 (3d Cir.1975); United States v. Bueno, 447 F.2d 903 (5th Cir.1971).