WARNER, J.
In this appeal from a conviction and sentence after a plea to trafficking in cocaine and oxycodone, where appellant reserved her right to appeal dispositive motions, she challenges the trial court’s denial of her motion to suppress the drugs found. Because the totality of the circumstances shows that the officers had reasonable suspicion to stop appellant, the trial court did not err in denying the motion to suppress. Appellant also claims that the court should have granted her motion to dismiss based upon objective entrapment, but we conclude that the trial court correctly denied the motion. Finally, she claims that the case against her is based upon “perjured” testimony from the lead detective, relying upon various inconsistencies between his testimony and the testimony of one informant, as well as inconsistencies between his testimony at various depositions and hearings. Although we conclude that appellant has not proved that the detective’s testimony was affirmatively false, we need not address the merits, because relief, if any, for knowingly relying on false testimony would be reversal for a new trial or hearing, not dismissal of all charges. Therefore, it is not dispositive and cannot be reserved for appeal from the conviction based upon a plea. We thus affirm.
The case against appellant began earlier on the day of appellant’s arrest. Officers arrested an individual in Hollywood, Florida, with whom they had set up a purchase of cocaine through a confidential informant (the original confidential informant). The Hollywood arrestee cooperated and told the officers that her supplier was waiting outside a restaurant several miles away to provide additional drugs upon receipt of money. She called the supplier to inform him that she was on her way to his location. The officers and the Hollywood ar-restee drove to the place where her supplier was located in the back of a restaurant. Officers surrounded the supplier’s vehicle. When confronted by the police, just like the Hollywood arrestee, he also agreed to cooperate with the officers, who obtained his license to check his identity. This second confidential informant informed the officers that his supplier, a woman, was inside the restaurant waiting for his call to deliver the drugs which were in her car parked outside the front of the restaurant. He called his supplier with the lead detective listening to the call. After he asked her if she had the “stuff,” she said that she did. She agreed to meet him at her vehicle outside the restaurant in five to ten minutes. The officers and this supplier-turned-informant (the second informant) went around to the front of the restaurant. The informant identified appellant as his supplier as she exited the restaurant. The officers observed her reach into the vehi *949 cle. She brought out an envelope. She stood with the envelope in her hand at the rear of her vehicle. Officers, including a K-9 unit, then approached her.
The first officer to approach appellant identified himself as a narcotics investigator. That officer testified that before he could say anything else, she said to him something to the effect of “this is what I was looking for,” as she handed the officer the envelope. Just behind the first officer was the detective with the trained drug dog. As the first officer spoke to appellant, the dog alerted on the envelope. While the testimony is in conflict as to whether the package was in appellant’s hand or the officer’s hand when the K-9 unit alerted, there is no question that the trained dog alerted on the envelope. The lead detective then opened the envelope and found 400 grams of cocaine. At that point, the detective arrested appellant. The dog also alerted on appellant’s purse which contained both cocaine and oxycon-tin pills.
Appellant sought to suppress the drugs seized, arguing that she was seized without reasonable suspicion when the officers approached her. The trial court denied the motion.
Appellant filed a lengthy motion to dismiss the charges based upon objective entrapment, alleging that the police had set her up because of the fact that her husband and his brother were known drug traffickers, her husband having been sent to prison. Her theory seems to have been that the lead detective in her arrest cloaked the informants as confidential informants in order to entrap her. Once designated as confidential informants, their testimony was unavailable. According to appellant’s theory, the detective’s plan was to target appellant and to use the immunized Hollywood arrestee and her supplier as confidential informants so that appellant could not depose them to learn the truth of the plan.
As convoluted as the theory was, the trial court held an extensive evidentiary hearing on it. We have reviewed the transcript of that hearing. Appellant sought to prove that the detective was lying about many aspects of the case. Those “lies” were simply appellant’s attempt to distort previous testimony of the detective. As the exasperated detective said to appellant’s attorney at one point in his testimony, “I didn’t know how much you were going to focus in on one word rather than the story of actually what the truth of what happened there.” The “truth” of what happened was confirmed by the informants and the other detectives on the scene. Only some contradictory testimony was furnished from the Hollywood arres-tee, who had met with appellant’s attorney on numerous occasions prior to her testimony in court. At the very best, the testimony of the Hollywood arrestee provided contradictory evidence, and the credibility of both the arrestee and the detective would be properly placed before a jury. Many other detectives testified, and none supplied evidence that supported her theory, nor did the other confidential informants.
The trial court denied the motion to dismiss, finding no objective entrapment. Although never finding that any witness offered false testimony, the court acknowledged that a verdict may not be based upon false testimony. Nevertheless, the court concluded that no due process violation had occurred at that point in the proceedings. After the court denied the motion to dismiss, the appellant filed a motion for reconsideration, clarification *950 and to conduct a Franks hearing.[1] Although filed in 2008, these were not denied until 2010. The appellant then pled to the crimes, reserving her right to appeal “dis-positive” motions. Neither the state nor the trial court stated on the record that all of the motions were dispositive. This appeal follows.
I. Motion to Suppress
A motion to suppress can present an issue of fact, an issue of law, or a combination of the two. State v. Glatzmayer, 789 So.2d 297, 301 (Fla.2001). Factual findings are reviewed for competent substantial evidence. Legal rulings are reviewed de novo. Connor v. State, 803 So.2d 598, 608 (Fla.2001).
In Fourth Amendment analysis, there are three levels of police encounter: (1) a consensual encounter, where the citizen is free to leave or voluntarily cooperate with police; (2) an investigatory stop based upon reasonable suspicion that the person is about to commit, is committing, or has committed a crime; and (3) an arrest based upon probable cause that a crime has occurred. See Popple v. State, 626 So.2d 185, 186 (Fla.1993). The facts of this case support a stop based upon reasonable suspicion, which may be found from the totality of the circumstances. U.S. v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002).
Although appellant makes much of the fact that the confidential informants were not known to the police in this case, under a totality of the circumstances approach, that, in and of itself, does not prevent the court from concluding that the officers possessed reasonable suspicion to conduct a stop. In State v. Flores, 932 So.2d 341 (Fla. 2d DCA 2006), the Second District found that a similar constellation of facts to those present in this case constituted reasonable suspicion to stop the defendant. In Flores, an individual had been arrested earlier in the day for possession of cocaine after a controlled buy. That individual immediately became an informant and, with the officers listening to his conversation, arranged a drug buy with his supplier. The Cl gave a description of the car that the supplier would be driving and the location of the purchase, and stated that the supplier would be alone. When officers arrived, they observed the car with two men in it. Officers approached the vehicle with guns drawn. The defendant exited the car and dropped what turned out to be cocaine. While the trial court suppressed the evidence, finding that the officers did not have probable cause to arrest, the Second District reversed, concluding that the officers had reasonable suspicion to stop the individuals and that the cocaine was dropped voluntarily after the stop, providing probable cause at that point to arrest.
The Second District discounted the fact that the officers had not worked with the Cl prior to the controlled buy. While that may have factored into a determination of probable cause to arrest, the court determined that the officers had reasonable suspicion.
[O]ur de novo review of the totality of the circumstances in this case leads us to conclude that the police did have reasonable suspicion to conduct an investigatory stop of Flores. The Cl had purchased drugs from Flores previously, thus establishing the basis of his knowledge. The officer listened as the Cl made arrangements to purchase $50 of cocaine from someone on the telephone. *951 The Cl provided information as to where and when the purchase would take place and what type of vehicle the supplier would be driving. The officers reported to the location given by the Cl, and a vehicle matching the description given by the Cl timely arrived. The totality of these circumstances supports the conclusion that the officers had the necessary reasonable suspicion to make the investigatory stop.
Id. at 344.
Similarly, in this case, the totality of the circumstances shows that the officers had a reasonable suspicion that appellant was involved in a drug sale, even though the two informants, the last of whom pointed out appellant, were unknown to the police at the time. Here, the officers conducted a buy from the Hollywood arrestee who called her supplier and then identified his location for the officers. The officers proceeded to that location with the arrestee, where they found her supplier in a restaurant parking lot. They immediately surrounded him, and he admitted his connection to the arrestee. He then divulged information that his supplier, a woman, was in the nearby restaurant. The Cl called her in the presence of the officers and asked her if she had the “stuff,” arranging for her to come out of the restaurant and give it to him. He also pointed out her vehicle in the parking lot. He then identified her to the officers as she came out of the restaurant and got an envelope out of the vehicle. Officers then approached appellant with the K-9 unit.
Based upon the totality of the circumstances, the officers had reasonable suspicion that appellant was engaging in the sale of drugs. When they approached her, she started to hand them the envelope, without them asking, telling them that it was what they were looking for. At the same time the dog alerted on the envelope, providing probable cause for her arrest. The trial court did not err in denying the motion to suppress.
II. Motion to Dismiss Based Upon Objective Entrapment and False Testimony
Objective entrapment focuses on governmental misconduct which violates a defendant’s due process rights by ensnaring him to commit a crime, regardless of predisposition. State v. Glosson, 462 So.2d 1082, 1084 (Fla.1985). The remedy for egregious police conduct constituting entrapment is dismissal of the charges. Id. We gave examples of objective entrapment in State v. Blanco, 896 So.2d 900, 901 (Fla. 4th DCA 2005):
The type of conduct held to violate due process is that which so offends decency or a sense of justice that judicial power may not be exercised to obtain a conviction. See, e.g., State v. Glosson, 462 So.2d 1082 (Fla.1985) (law enforcement entering into a contingency contract with informants to obtain convictions); Cruz v. State, 465 So.2d 516 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985) (law enforcement officer appearing inebriated and hanging money from his pocket in high crime area); State v. Williams, 623 So.2d 462 (Fla.1993) (illegal manufacture of crack cocaine by law enforcement officials for use in reverse-sting operation); Soohoo v. State, 737 So.2d 1108 (Fla. 4th DCA 1999) (undercover agent’s consignment arrangement for sale of drugs).
All of this conduct entices or facilitates the commission of the crime. In this case, we agree with the trial court that there was no egregious misconduct of law enforcement in setting up the drug transactions in this case. In fact, the use of confidential informants and “flipping” suspects to go up the supply chain to find the major suppliers is common police work. We *952 agree with the trial court that no egregious police conduct entrapped appellant to commit the crime that occurred.
While objective entrapment involves the police action in setting up criminal activity, a defendant has a due process right not to be convicted based upon false testimony. See Giglio v. U.S., 405 U.S. 150, 153-54, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). The state may not knowingly use false testimony to convict a defendant. Napue v. People of State of Ill., 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959). The remedy, however, is to grant a new trial if the false evidence could in any reasonable likelihood have affected the jury’s verdict. See Giglio, 405 U.S. at 154, 92 S.Ct. 763 (quoting Napue, 360 U.S. at 271, 79 S.Ct. at 1178).
Appellant claims that the lead detective provided false testimony at the hearing on the motion to suppress. We have reviewed the testimony of the detective as well as the other witnesses. As a successor judge noted in another order in this case, after reviewing the transcript of the hearing on the motion to dismiss, “Although [the detective’s testimony] may be inconsistent with statements made by [the Hollywood arrestee], [the detective’s] testimony was supported by the testimony of fellow law enforcement officers as well as the testimony of [the original Cl] and [the Hollywood arrestee’s supplier].” In other words, the testimony presents a credibility dispute as to various aspects of the drag transaction. Our own review of the record would indicate that none of the statements constitutes false testimony. Instead what we perceive are minor discrepancies or imperfect memory of events to which the detective had testified several times over the ten years this case has been pending.
In any event, due process protects the defendant from the use of false testimony to convict. The remedy for the use of false testimony is not dismissal but reversal and remand for a new trial. See Giglio, 405 U.S. at 154, 92 S.Ct. at 766. Because the appellant pled, reserving only the appeal of dispositive motions, her motion to dismiss based upon the detective’s testimony is not dispositive. Therefore, it is not a proper subject of appellate review after the plea.
We summarily dispose of appellant’s remaining claims. She is not entitled to appeal the motion for reconsideration or denial of a Franks hearing. The motion for reconsideration was not disposi-tive, nor was the motion for a Franks hearing, which in any event would not apply, as a search warrant was not involved in this case.
For these reasons, we affirm the conviction and sentence of appellant.
GROSS and LEVINE, JJ„ concur.

. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (requiring a hearing when the defendant claims that allegedly false statements are contained in an affidavit in support of the issuance of a search warrant).