DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**JAMAL RASHAD LAING,**
Appellee.

No. 4D14-1705

[January 6, 2016]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Robert L. Pegg, Judge; L.T. Case No. 312013CF 001361A.

Pamela Jo Bondi, Attorney General, Tallahassee, Monique Rolla and Georgina Jimenez-Orosa, Assistant Attorneys General, West Palm Beach, for appellant.

Carey Haughwout, Public Defender, and Alan T. Lipson, Assistant Public Defender, West Palm Beach, for appellee.

KLINGENSMITH, J.

The State of Florida (the "State") appeals an order granting Jamal Rashad Laing's ("appellee") motion to dismiss the charges of traveling to meet a minor for unlawful sexual activity ("count I") and lewd computer solicitation of a child ("count II"). We find that the trial court erred in granting appellee's motion to dismiss the charges under both the subjective and objective standards of entrapment, and reverse.

On October 9, 2013, a school resource officer observed appellee inside a parked car in a local park with a minor female ("S.G."). According to the resource officer, appellee was on top of S.G., kissing her.

At the time, appellee was nineteen years old and S.G. was fifteen. After the officer intervened and spoke with S.G., she told him that during the consensual encounter appellee attempted to touch her hip, breast,

and groin areas.[1]  The officer released appellee without arresting him after a warrant check came back clean.

The resource officer then transported S.G. back to school to interview her.  During the interview, she told him that she and appellee had multiple conversations after meeting on Facebook, and that appellee had picked her up that day after school.  It was also revealed that appellee and S.G. had exchanged nude pictures of themselves in those Facebook conversations.  S.G. showed the resource officer her phone containing numerous text messages between herself and appellee, and in one message appellee specifically stated that he wanted S.G. to perform oral sex on him.

The case then was turned over to a detective with the Indian River County Sheriff's Office for further investigation, who discovered that appellee had no criminal history.  Appellee did not call, text, or otherwise try to contact S.G. during the week following their encounter.

Using S.G.'s phone, the detective initiated contact with appellee on October 16 by texting him the word "hey."  Appellee responded by asking if S.G. had gotten in trouble for the incident.  After some innocent conversation between appellee and the detective posing as S.G., appellee asked S.G. if she thought they would have had sex if they had not been

---

[1] We note that although S.G. stated she did not let appellee touch her in any of these areas, the actions described by S.G. were sufficient to justify law enforcement's subsequent investigation as they could have been construed as an attempt to commit a lewd or lascivious molestation under section 800.04(5), Florida Statutes:

> (5) LEWD OR LASCIVIOUS MOLESTATION.—
> (a) A person who intentionally touches in a lewd or lascivious manner the breasts, genitals, genital area, or buttocks, or the clothing covering them, of a person less than 16 years of age, or forces or entices a person under 16 years of age to so touch the perpetrator, commits lewd or lascivious molestation.
>
> . . . .
>
> (c)2. An offender 18 years of age or older who commits lewd or lascivious molestation against a victim 12 years of age or older but less than 16 years of age commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

§ 800.04(5), Fla. Stat. (2013).

interrupted. The detective responded "maybe," and inquired whether or not the fact that she was only fifteen would have been a problem for appellee. When questioned as to why she was asking him that question, the detective responded (as S.G.) that it was to make sure appellee was comfortable with her age, and that it was not a problem with her if it was not a problem with him. Appellee stated that he did not care about her age.

Appellee then texted that he had been ready to have sex with S.G. during the first encounter, to which the detective responded, "too bad that cop showed up." Appellee replied that he knew they should not have gone to the park, and that they should have gone to a different location. In response, the detective told appellee, "I no [sic] a place where nobody would see us." Arrangements then were made to have appellee meet S.G. at a restaurant the following day.

Appellee confirmed he would meet S.G., and stated that he wanted her to perform oral sex on him. He also stated that he would show up only if she would give him some gas money. Appellee was arrested upon his arrival at the restaurant.

After being read his *Miranda* rights, appellee confessed that he had been texting S.G. and that he had gone to the restaurant to see her. He admitted that he knew S.G. was fifteen, and although he originally intended to have sex with S.G., his aunt dissuaded him from doing so because he could get in trouble.[2] During the drive to jail, appellee also stated that he would have had sex with S.G. if not interrupted, although it is unclear whether he meant that he would have done so on the day of his arrest or in the park a week earlier.

Appellee moved to dismiss his charges based on objective and subjective entrapment by law enforcement. After an evidentiary hearing, the court granted appellee's motion, finding that he was entrapped as a matter of law under the objective standard of entrapment because his due process rights were violated. The trial court also found that appellee was entrapped under the subjective standard because of active inducement by the detective, and because there was no evidence of predisposition on the part of appellee. The State now appeals from that order of dismissal.

---

[2] Despite his professed change of heart, a deputy testified that he found a condom in appellee's pocket.

### *The Entrapment Defense*

In Florida, the defense of entrapment is bifurcated into objective and subjective variants:

> There are two different theories of entrapment. "Objective entrapment analysis focuses on the conduct of law enforcement" and "operates as a bar to prosecution in those instances where the government's conduct 'so offends decency or a sense of justice' that it amounts to a denial of due process." *Davis v. State,* 937 So. 2d 300, 302 (Fla. 4th DCA 2006) (quoting *State v. Blanco,* 896 So. 2d 900, 901 (Fla. 4th DCA 2005)). Subjective entrapment, on the other hand, "is applied in the absence of egregious law enforcement conduct and focuses on inducement of the accused based on an apparent lack of predisposition to commit the offense." *Id.*

*State v. Henderson,* 955 So. 2d 1193, 1194 (Fla. 4th DCA 2007).

Section 777.201, Florida Statutes, provides:

> (1) A law enforcement officer, a person engaged in cooperation with a law enforcement officer, or a person acting as an agent of a law enforcement officer perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, he or she *induces* or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.

> (2) A person prosecuted for a crime shall be acquitted if the person proves by a preponderance of the evidence that his or her criminal conduct occurred as a result of an entrapment. The issue of entrapment shall be tried by the trier of fact.

§ 777.201, Fla. Stat. (2013) (emphasis added).

We have defined inducement as "government conduct creating a substantial risk that an otherwise law-abiding citizen would commit an

4

offense, including persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship." *Farley v. State*, 848 So. 2d 393, 395 (Fla. 4th DCA 2003) (quoting *United States v. Davis*, 36 F.3d 1424, 1430 (9th Cir. 1994)).

### *Objective Due Process Standard*

Entrapment under the objective due process standard requires "conduct of law enforcement agents [that] is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Tercero v. State*, 963 So. 2d 878, 883 (Fla. 4th DCA 2007) (quoting *State v. Glosson*, 462 So. 2d 1082, 1084 (Fla. 1985)).

In considering objective entrapment, courts must look to the totality of the circumstances, focusing on "whether the government conduct 'so offends decency or a sense of justice that judicial power may not be exercised to obtain a conviction.'" *Hernandez v. State*, 17 So. 3d 748, 751 (Fla. 5th DCA 2009) (quoting *State v. Blanco*, 896 So. 2d 900, 901 (Fla. 4th DCA 2005)). "It is a balancing test; the court must weigh the rights of the defendant against the government's need to combat crime." *Bist v. State*, 35 So. 3d 936, 939 (Fla. 5th DCA 2010). The justification lies in stunting prosecutions premised upon "methods offending one's sense of justice." *Munoz v. State*, 629 So. 2d 90, 98 (Fla. 1993).

"Cases finding a due process violation based on outrageous government conduct have one common thread: affirmative and unacceptable conduct by law enforcement or its agent," *Bist*, 35 So. 3d at 940, that "entices or facilitates the *commission* of the crime." *Schwartz v. State*, 125 So. 3d 946, 951 (Fla. 4th DCA 2013).

When evaluating this standard, the trial court must, however, "limit its consideration to the conduct of law enforcement." *Blanco*, 896 So. 2d at 902. "[T]he effect of the officer's conduct on the defendant, the defendant's subjective perception of the situation, and [the defendant's] apparent lack of predisposition to commit the offense" are all factors that are irrelevant to a claim of entrapment on due process grounds.[3] *Id.*

---

[3] We have in other cases mentioned factors related to predisposition in the due process analysis, but it appears those factors were not dispositive of the issue of whether there was objective entrapment. *See Mendel v. State*, 903 So. 2d 1027, 1029 (Fla. 4th DCA 2005) ("*The defendant had prior felonies, and the CI had*

For example, the Florida Supreme Court has found objective entrapment in cases where law enforcement officers provide informants with a financial stake in procuring convictions, or require informants to effectuate arrests within a defined timeframe, because both scenarios greatly incentivize the informant "not only to make criminal cases, but also to color . . . testimony or even commit perjury." *Glosson*, 462 So. 2d at 1085 (barring law enforcement from using contingency fees, wherein informants would receive ten percent of all civil forfeitures in exchange for convictions); *see also State v. Hunter*, 586 So. 2d 319, 320, 322 (Fla. 1991) (citation omitted) (finding objective entrapment where the informant's "contract" required in part that he obtain "at least four kilograms of cocaine within a certain period of time").[4]

Objective entrapment also exists where law enforcement otherwise employs impermissible tactics to create the offense. *See, e.g., State v. Williams*, 623 So. 2d 462, 463 (Fla. 1993) (holding that law enforcement violated the due process clause of the Florida Constitution by manufacturing crack cocaine to be used in reverse-sting operation); *Madera v. State*, 943 So. 2d 960, 961-62 (Fla. 4th DCA 2006) (holding that law enforcement violated due process clause of the Florida Constitution where confidential informant promised the defendant an intimate relationship if he helped her obtain narcotics).

Appellee argues that the detective's conduct in this case was egregious because the agent initiated contact with him via text message. However, creating nothing more than an opportunity to commit a crime

---

*been instructed to approach only persons he had previously had drug business with or who were known to deal in drugs.* Under these facts, there was no due process violation." (emphasis added)); *see also Nadeau v. State*, 683 So. 2d 504, 506 (Fla. 4th DCA 1995) ("First, the agents and officers did not actively monitor Antar's repeated contacts with Nadeau nor did they prepare any notes on their contact with Antar. *Nadeau had no criminal history and the officers acknowledged that they knew of no drug activity prior to his involvement in this case.* Therefore, we hold that the law enforcement conduct in this case was so outrageous as to constitute a denial of appellant's due process rights." (emphasis added)).

[4] *Hunter* was decided under the objective test of entrapment set forth in *Cruz v. State*, 465 So. 2d 516 (Fla. 1985), *Hunter*, 586 So. 2d at 322, but that test was abolished by section 777.201. *See Munoz*, 629 So. 2d at 99. Nonetheless, the objective entrapment test from *Cruz* is essentially the same concept as the due process entrapment defense. *See id.* at 102 (Kogan, J., concurring).

6

is not prohibited. *See Bist,* 35 So. 3d at 940 (finding no due process violation where law enforcement set up a sting operation in which a decoy entered an online chat room purporting to be a minor, waited for someone to solicit sexual activity, and allowed the defendant to set up a meeting intending to engage in sexual activity with a 13-year-old); *Blanco,* 896 So. 2d at 901-02 (ruling undercover officer's conduct in approaching the defendant at a gay bar and telling the defendant that he liked to "party," which he explained as meaning the use of cocaine, was not so outrageous as to warrant dismissal of charges against the defendant for providing crystal meth to the officer); *Khelifi v. State,* 560 So. 2d 333, 333-34 (Fla. 4th DCA 1990) (holding no violation of due process where informant, who acted pursuant to a substantial assistance agreement, intentionally set up a large cocaine purchase by the co-defendants; the informant did not make any "threats or persistent enticements causing the defendant to act contrary to a law abiding predisposition"); *Gonzalez v. State,* 525 So. 2d 1005, 1006 (Fla. 3d DCA 1988) (finding no objective entrapment where the informant cajoled the defendant and called him ten or fifteen times to induce the meeting with the undercover officer).[5]

We have held in previous cases that repeated calls alone, absent any showing of threats or promises, is insufficient to constitute entrapment. *See, e.g., Henderson,* 955 So. 2d at 1195 (finding no inducement where informant, after years of no communication with defendant, placed a series of calls to the defendant to arrange a drug transaction); *see also Quesada v. State,* 707 So. 2d 808, 810 (Fla. 4th DCA 1998) ("Repeated calls alone do not necessitate a finding of entrapment."). Here, there is no evidence that the detective prodded or coerced appellee into submitting to pressure to have sex with an underage female. Nor was there any type of law enforcement misconduct that we previously have stated violates a defendant's due process rights by ensnaring the defendant to commit a crime, regardless of his predisposition. *See Schwartz,* 125 So. 3d at 951 (providing various examples).

Appellee asserts that this case is similar to *Farley,* where we held that the government's manufacture of child pornography and assurances of protection from government interference, intended to lure defendant into purchasing such material, was objective entrapment which violated due process. 848 So. 2d at 398. We do not find the facts in *Farley* to be analogous to this case. The defendant in *Farley,* who was not a

---

[5] *Gonzalez* was also decided under the objective test of entrapment set forth in *Cruz. See Gonzalez,* 525 So. 2d at 1006.

registered sex offender, was initially contacted by law enforcement through a spam e-mail soliciting patrons for a fictitious pornography business. *Id.* at 394. The e-mail included repeated assurances that all communications and transactions would be shielded from government interference. *Id.* The defendant had never before contacted the source of the e-mail; Florida law enforcement found his e-mail address on a list compiled by a Texas taskforce. *Id.* Unlike the defendant in *Farley*, appellee was not targeted out of the blue, but instead: 1) had physical interaction with an underage minor in an encounter where the minor admitted that appellee attempted to touch her breasts, thighs, and groin areas; 2) had exchanged nude photographs with that same minor; and 3) was not solicited or coerced into agreeing to engage in sexual conduct with the minor.

Therefore, the Indian River Sheriff's Officer did not target appellee as someone "not involved in an existing criminal undertaking in need of detection by law enforcement." *Id.* at 397; *see also Cline v. State*, 958 So. 2d 961, 965 (Fla. 4th DCA 2007) ("The circumstances, here, differ from those cases where objective entrapment was found. This is not a case where the defendant had no prior criminal history or involvement with drugs . . . ."); *Mendel v. State*, 903 So. 2d 1027, 1029 (Fla. 4th DCA 2005) ("The defendant had prior felonies, and the CI had been instructed to approach only persons he had previously had drug business with or who were known to deal in drugs. Under these facts, there was no due process violation.").

This case is not one where the crime was totally and completely orchestrated by law enforcement. The fact that appellee did not re-initiate contact with S.G. for a week after being interrupted on October 9 is immaterial. Law enforcement's text from S.G.'s phone of the word "hey" did not constitute a manufacture of the crime, nor was it so far removed from the precipitating event that there was a break in the chain of continuity of appellant's conduct. Moreover, we are not persuaded that the detective's comment that he knew "a place where no one would find [them]" amounts to egregious police conduct. As such, law enforcement's actions did not rise to the level of outrageousness or egregiousness required to support a finding of objective entrapment on due process grounds. The trial court should have denied appellee's motion to dismiss on the objective entrapment defense.

### *Subjective Standard*

Application of the subjective standard codified in section 777.201 requires a three-part test: 1) "whether an agent of the government induced the accused to commit the offense charged[;]" 2) if so, "whether the accused was predisposed to commit the offense charged[;]"and 3) "whether the entrapment evaluation should be submitted to a jury." *Munoz*, 629 So. 2d at 99-100. "The first two [parts] involve questions of fact and differing burdens of proof, and the third [part] addresses whether the issue of entrapment must be submitted to the jury or whether the issue can be decided by the judge as a matter of law." *Id.* at 99.

Regarding the first prong of the test, "the accused has the burden of proof and, pursuant to section 777.201, must establish this factor by a preponderance of the evidence." *Id.* The court should move on to the second and third questions only if the defendant establishes inducement. *See id.*; *see also Henderson*, 955 So. 2d at 1195 (citing *Munoz*, 629 So. 2d at 99).

Texting the word "hey" to appellee after a week of no contact with the victim is wholly insufficient to constitute inducement. In *Henderson*, this court found no inducement despite the fact that a government informant seeking methamphetamine called a defendant to whom the informant had not spoken for five or six years. 955 So. 2d at 1195. There, the defendant previously had sold drugs to and bought drugs from the informant. *Id.*

There was no evidence in this case that the detective induced appellee to agree to a sexual encounter. Rather, it was appellee who proposed meeting the minor once again to engage in the unlawful acts that previously had been interrupted, after the detective mentioned that he knew of a more private area. Appellee guided the conversation to sex on his own volition; the detective's innocuous text message to start the conversation with appellee did not amount to a concerted effort to lure him into committing a crime, and neither did his statement regarding knowledge of a more secluded location. Therefore, appellee was not induced. *See State v. Dickinson*, 370 So. 2d 762, 763 (Fla. 1979) ("There is clearly no constitutional prohibition against a law enforcement officer providing the opportunity for a person who has the willingness and readiness to break the law.").

## *Conclusion*

Because the evidence shows that law enforcement did not induce appellee to commit the crimes charged, we need not address the other prongs of the subjective entrapment test. *See Munoz*, 629 So. 2d at 99; *see also Henderson*, 955 So. 2d at 1195. We reverse the trial court's dismissal of counts I and II on the grounds that neither objective nor subjective entrapment existed as a matter of law, and remand for proceedings consistent with this opinion.

*Reversed and Remanded.*

WARNER and LEVINE, JJ., concur.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***