# Supreme Court of Florida

_____

No. SC20-1656
_____

**NGOC C. THACH,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

June 30, 2022

GROSSHANS, J.

In this case, we consider whether midtrial amendments to a charging document that alter the elements of a criminal offense are per se prejudicial. For the reasons explained below, we hold that any such amendments should be assessed on a case-by-case basis to determine, based on the totality of the circumstances, if they prejudice the substantial rights of the defendant. Consistent with our holding, we approve the First District Court of Appeal's decision in _Thach v. State_, 304 So. 3d 387, 388 (Fla. 1st DCA 2020), and disapprove the Fourth District Court of Appeal's decisions in

*Viladoine v. State*, 268 So. 3d 804 (Fla. 4th DCA 2019), and *Simbert v. State*, 226 So. 3d 883 (Fla. 4th DCA 2017), to the extent that they apply a per se prejudice rule to midtrial amendments.[1]

## I. Background

Through a second amended information, the State charged Ngoc C. Thach with three counts of capital sexual battery, nine counts of sexual battery, and three counts of lewd or lascivious molestation. As charged, these crimes were committed against his three stepdaughters. Relevant to this case are two counts of capital sexual battery and two counts of sexual battery. We refer to all four as sexual battery counts.

At trial, the three stepdaughters testified for the State, detailing Thach's multiple sexual encounters with them. However, they did not give any testimony establishing one element of sexual battery (penetration or union with the victim's body part) for the four sexual battery counts. As a result, the evidence as to those charges was insufficient to prove an essential element of the offenses as charged. *See* § 794.011(1)(h), Fla. Stat. (2017).

---

1. We have jurisdiction. *See* art. V, § 3(b)(3), Fla. Const.

Noting the lack of evidence of penetration or union, Thach sought a judgment of acquittal as to those four sexual battery charges. After expressing agreement with Thach's insufficiency argument, the State moved to amend the four counts so that each alleged the crime of lewd or lascivious molestation. Defense counsel objected, describing the prejudice to Thach as follows:

> Well, Judge, I guess the only thing is that the lewd and lascivious molestation would require evidence of lewd or lascivious touching. And so the State is alleging that the union satisfies that and potentially I could have cross-examined the witness more in that sense, had I known the State might proceed on that charge. And I understand that, you know, I had the opportunity to cross-examine the witness, but to that extent that's the only thing I can suggest to the court would create a prejudice.

Rejecting Thach's argument on prejudice, the trial court allowed the amendment. Ultimately, the jury found Thach guilty on the four amended counts and others. The court entered judgment in accordance with the verdicts and imposed lengthy prison sentences.

Thach appealed, arguing that the trial court erred in allowing the midtrial amendment. The First District disagreed. At the outset, the court articulated the following legal standard governing

- 3 -

amendments: "[T]he State 'may substantively amend an information during trial, even over the objection of the defendant, unless there is a showing of prejudice to the substantial rights of the defendant.' " *Thach*, 304 So. 3d at 388 (quoting *State v. Anderson,* 537 So. 2d 1373, 1375 (Fla. 1989)). Applying that standard, the court held that the amendment did not prejudice Thach. This was so, the First District reasoned, because the four sexual batteries were charged in such a way "that the amended lewd or lascivious molestation charges could not help but have been proven if the . . . [sexual battery] allegations were proven." *Id.* at 388. Judge Bilbrey dissented. He would have reversed, reasoning that because the amendment altered the elements of the charged offense it violated due process and was per se prejudicial. *Id.* at 391 (Bilbrey, J. dissenting).

Thach then sought discretionary review of the First District's decision on the basis that it expressly and directly conflicts with the Fourth District's case law on the application of a per se prejudice

rule for substantive midtrial amendments.  We granted

discretionary review to resolve the conflict.[2]

## II.  Legal Standard

Our well-established standard for amending an information

midtrial was first adopted in *Lackos v. State*, 339 So. 2d 217, 219

(Fla. 1976).  In that case, we abandoned a strict formalistic

approach and adopted a more flexible standard which required the

trial court to consider the prejudice to the accused to determine if

the amendment was permissible.  We noted that the emphasis on

prejudice, rather than technical irregularities, was consistent with

rule 3.140(o) of the Florida Rules of Criminal Procedure.[3]

---

2.  Because the conflict issue here requires us to determine the proper rule of law governing substantive midtrial amendments, the standard of review is de novo.  *See Khianthalat v. State*, 974 So. 2d 359, 360 (Fla. 2008).

3.  Today's version of the rule is nearly identical to the prior version we considered in *Lackos* and provides as follows:

> No indictment or information, or any count thereof, shall be dismissed or judgment arrested, or new trial granted on account of any defect in the form of the indictment or information or of misjoinder of offenses or for any cause whatsoever, unless the court shall be of the opinion that the indictment or information is so vague, indistinct, and indefinite as to mislead the accused and embarrass him or her in the preparation of a defense or expose the

- 5 -

In the forty-five years since *Lackos* was decided, we have reaffirmed our commitment to the prejudice standard as governing the permissibility of midtrial amendments.  *See Anderson*, 537 So. 2d at 1375 ("*Lackos* stands for the proposition that the state may substantively amend an information during trial, even over the objection of the defendant, unless there is a showing of prejudice to the substantial rights of the defendant."); *State v. Clements*, 903 So. 2d 919, 921 (Fla. 2005) (Holding that the state may substantively amend an information midtrial unless it prejudices the defendant's substantial rights).

Our case law has never recognized a per se prejudice rule. Rather, the origin of this rule appears to trace back to the Fourth District's decision in *Green v. State*, 728 So. 2d 779 (Fla. 4th DCA 1999).  In applying the prejudice standard, the Fourth District considered a midtrial amendment that changed the identity of the battery victim.  Consistent with our case law, the Fourth District

<hr>

accused after conviction or acquittal to substantial danger of a new prosecution for the same offense.

Fla. R. Crim. P. 3.140(o).

held that this amendment prejudiced the substantial rights of the defendant by significantly impairing the preparation of his defense. However, one sentence in *Green*'s analysis appears to have laid the groundwork for what would later be understood as the per se prejudice rule. The *Green* court reasoned that an "amendment is permissible when it merely clarifies some detail of the existing charge." *Id.* at 781.

The First District expanded upon this reasoning in *Wright v. State*, 41 So. 3d 924, 926 (Fla. 1st DCA 2010). Holding that a substantive midtrial change to the elements of the crime charged is per se prejudicial, the district court reasoned:

> While a trial court's ruling on a motion to amend the information is reviewed for an abuse of discretion, it is well settled that the State may not amend an information during trial if the amendment prejudices the defendant. It is likewise clear the changing or adding of an offense in an information is a substantive change evoking prejudice and requiring a continuance. *Further, an amendment that substantively alters the elements of the crime charged is per se prejudicial.*

*Id.* at 926 (emphasis added) (citations omitted).

Since *Wright*, the per se prejudice rule has been applied in only a handful of cases—namely, the two conflict cases.

In *Simbert,* the Fourth District reversed the defendant's conviction for lewd or lascivious battery after the State's midtrial amendment changed an element of the charge from oral to digital penetration.  226 So. 3d at 885.  The court, relying on *Green* and *Wright,* held that the amendment was per se prejudicial because it did not merely clarify the charge but instead changed an essential element of the crime.  *Id.* at 885-86.

Similarly, in *Viladoine,* the Fourth District reversed a sexual battery conviction where the mode of unlawful contact was amended midtrial, reasoning that the amendment altered the elements of the charged crime and was thus per se prejudicial.  268 So. 3d at 805-06.

Having reviewed our case law, we now conclude that this per se prejudice rule is an unwarranted expansion of *Lackos, Anderson,* and *Clements*—which do not hold or suggest that one factor will always be dispositive of the prejudice analysis.  And neither Thach nor the dissent provide any persuasive reason to extend *Lackos, Anderson,* and *Clements* in this regard.  Accordingly, we reaffirm that the proper standard is an individualized showing of prejudice

to the substantial rights[4] of the defendant. Prejudice, in this context, depends not on any one factor, but on the totality of the circumstances at the time of the amendment. Contrary to the dissent's unfounded assertion, we are not creating a new standard today. The standard we now adhere to has been our rule for forty-five years.[5]

Nor do we share Thach's or the dissent's concerns that this standard is too difficult for Florida courts to apply uniformly. In comparable circumstances, we have found this type of individualized fact-specific analysis workable. For example, when the State commits a discovery violation in a criminal case, it does

---

4. In this context, a defendant's substantial rights encompass the right to a fair trial. 38 Fla. Jur. 2d *New Trial* § 12 (2022) (equating substantial rights with entitlement to a fair trial); *cf. Carlson v. State*, 166 So. 3d 957, 959 (Fla. 4th DCA 2015); *Hutchinson v. State*, 738 So. 2d 473 (Fla. 4th DCA 1999); *Peevey v. State*, 820 So. 2d 422 (Fla. 4th DCA 2002).

5. We acknowledge that today is the first time we have used the phrase "totality of the circumstances" in discussing the prejudice analysis. However, it is clear from our case law that the prejudice determination depends on the facts and circumstances of the case being reviewed. Thus, we break no new ground by saying that the prejudice analysis requires consideration of the totality of the circumstances.

not result in an automatic mistrial. Instead, the trial court conducts a *Richardson*[6] analysis to determine whether the discovery violation warrants a mistrial or some other remedy. *See Landry v. State*, 931 So. 2d 1063, 1065 (Fla. 4th DCA 2006). Carrying out this analysis requires courts to look to the specific facts and circumstances of each case and determine whether the defendant was prejudiced by the discovery violation. *See McDuffie v. State*, 970 So. 2d 312, 321 (Fla. 2007). And like the individualized prejudice analysis for midtrial amendments, it safeguards defendants' rights while ensuring the prompt and efficient administration of justice.[7]

---

6. *Richardson v. State*, 246 So. 2d 771 (Fla. 1971).

7. To the extent the dissent expresses concern that a totality of the circumstances test is insufficient to protect the constitutional interest at stake, that concern is misplaced. Courts routinely analyze due process claims by assessing the totality of the circumstances. *See Moore v. State*, 289 So. 3d 943, 945 (Fla. 4th DCA 2020) (voluntariness of confession); *State v. Laing*, 182 So. 3d 812, 816 (Fla. 4th DCA 2016) (objective entrapment); *Rolle v. State*, 112 So. 3d 729, 730 (Fla. 3d DCA 2013) (suggestiveness of out-of-court eyewitness identification); *Wilson v. State*, 845 So. 2d 142, 156 (Fla. 2003) (imposition of increased sentence "after unsuccessful plea discussions in which the trial judge participated"); *Luckes v. Cnty. of Hennepin*, 415 F.3d 936, 939 (8th Cir. 2005) (extended detention following arrest authorized by lawful warrant); *Norris v. Engles*, 494 F.3d 634, 638 (8th Cir. 2007)

Finally, we categorically reject the dissent's assertion that our decision will lead to "trials by ambush." In no way do we suggest that the State has unfettered discretion to amend the information at any time or for any reason. Where, under the facts and circumstances of the individual case, an amendment prejudices a defendant's substantial rights, that amendment would be improper. *See, e.g., Davis v. State*, 313 So. 3d 835 (Fla. 2d DCA 2021); *Davis v. State*, 740 So. 2d 86 (Fla. 1st DCA 1999); *Johnson v. State*, 439 So. 2d 342 (Fla. 2d DCA 1983); *Turner v. State*, 376 So. 2d 429, 430 (Fla. 1st DCA 1979). However, we decline to adopt a blanket rule that requires a finding of prejudice when a midtrial amendment alters the elements of a charged offense.

## D. Application

Having determined the applicable law, we return to the facts before us. The First District applied the correct rule of law by using the prejudice standard and engaging in a fact-specific individualized inquiry. It considered the allegations in the information compared

---

(conscience-shocking conduct by government officer); *Hale v. Boyle Cnty.*, 18 F.4th 845, 852 (6th Cir. 2021) (excessive force on detained individuals).

to the amended charges and the defendant's theory of the case. As to the latter point, the court stressed:

> The State charged and convicted Appellant on other counts of lewd or lascivious molestation against the same victims. And Appellant's trial tactics on these counts never suggested that the stepdaughters misinterpreted Appellant's touching, or that he did not conduct these acts in a sensual manner. Appellant cross-examined each victim, knowing that he was charged with multiple counts, including other lewd or lascivious acts, without questioning how he touched them. Instead, Appellant's defensive posture was that his victims' allegations were all fabricated.

*Thach*, 304 So. 3d at 389 (citing *Holland*, 210 So. 3d 238, 240 (Fla. 1st DCA 2017)).

We further note that the amended charges alleged sexually motivated touching against the same victims and stemming from the same incidents as the original charges.

The dissent seems to suggest that Thach was prejudiced because he was unaware of the amended charges before trial and thus relied on the original charges in his jury selection, opening statements, and cross-examination of the witnesses. *See* dissenting op. at 18. However, the dissent overlooks facts supporting a finding of no prejudice. Besides the points noted above, had the amended charges prejudiced Thach, we would have expected him to request

that the court recall witnesses for additional cross-examination so that he "could have cross-examined the witness[es] more in that sense." But Thach did not. Nor did he request a continuance. Instead, he chose to proceed on the charges as amended and gave a closing argument that repeated the same themes discussed in opening statements.

Accordingly, based on our review of the record, we agree that Thach was not prejudiced by the midtrial amendment. Thus, the amendment was permissible.

### E. Conclusion

Because the First District applied the correct prejudice standard and its analysis is supported by the record, we approve the decision below. We disapprove of *Simbert*, *Viladoine*, and *Wright* to the extent they apply the per se prejudice rule and are inconsistent with this opinion.

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, MUÑIZ, and COURIEL, JJ., concur.
LABARGA, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

- 13 -

LABARGA, J., dissenting.

At the time this case proceeded to trial by jury, Ngoc Thach was charged with three counts of capital sexual battery, eight counts of sexual battery, and three counts of lewd or lascivious molestation. The charged offenses stemmed from incidents involving Thach's three stepdaughters. Because the victims failed to give testimony establishing penetration or union with respect to four of the sexual battery counts, Thach sought a judgment of acquittal after the conclusion of the State's case-in-chief. Over Thach's prejudice objections, the trial court permitted the State to amend—or replace—these four counts so that each instead charged the crime of lewd or lascivious molestation. Thach did not testify nor present any witnesses; thus, the evidentiary phase of this jury trial formally ended immediately after the State was permitted to replace the four sexual battery counts with four counts of lewd or lascivious molestation.[8]

---

8. In fact, for all practical purposes, the presentation of evidence ended even *before* the charges were amended. After the State rested its case and the trial court excused the jury to address Thach's motion for judgment of acquittal—which led to the State

- 14 -

Consequently, defense counsel delivered his closing argument without having an opportunity to cross-examine the victims specifically about the amended charges. Because Thach was clearly prejudiced by these amendments at the very end of the evidentiary phase of his trial, his unequivocal right to due process of law was violated.

The events leading up to the motion for judgment of acquittal and the trial court's ruling are well described in Judge Bilbrey's dissent:

> After the State rested its case-in-chief, Appellant moved for a judgment of acquittal as to counts 2 and 3, each of which alleged sexual battery by a person age 18 or older upon a child under the age of 12 years, a crime known as capital sexual battery. The prosecutor initially agreed that a JOA was warranted as to counts 2 and 3. The prosecutor also agreed that a JOA was warranted as to count 8, which alleged sexual battery by a person in familial or custodial authority of a child between the age of 12 and 18 years. Further, the prosecutor conceded that the evidence did not establish capital sexual battery as alleged in count 1.
>
> As for counts 12 and 13, the prosecutor argued that those counts of sexual battery by a person in familial or custodial authority of a child between the age of 12 and 18 years, should be "JOAed down to a lesser included

being allowed to amend the charges—the defense rested without presenting any witnesses.

offense[s] of molestation." Defense counsel reminded the trial court that lewd and lascivious molestation is not a lesser included offense of sexual battery by a person in familial or custodial authority. The trial court agreed to give the parties some time to consider the appropriate dispositions.

After a break, the prosecutor announced that she did not think, after all, the charges could be reduced by "JOA-ing . . . down," and therefore, *she orally moved to amend count 1 from capital sexual battery to lewd or lascivious molestation.* The defense objected. When asked what prejudice the defense would suffer, defense counsel replied that his cross-examination would have been different, and he would have cross-examined the victim regarding the evidence to support lewd and lascivious touching. The objection was overruled. The State was also permitted to *orally amend counts 2, 12, and 13 to allege lewd and lascivious molestation rather than sexual battery,* over the objection of the defense. A judgment of acquittal was entered as to counts 3 (capital sexual battery) and 8 (sexual battery by a person in familial or custodial authority on a child between the age of 12 and 18 years).

*Thach v. State,* 304 So. 3d 387, 390 (Fla. 1st DCA 2020) (Bilbrey, J., dissenting) (citations omitted) (emphasis added).

The First District agreed with the trial court's conclusion, holding that amending the four counts did not prejudice Thach. *Id.* at 388. The court noted, "While the two crimes are different, the manner that these four sexual battery counts were charged in the second amended information were such that the amended lewd or

- 16 -

lascivious molestation charges could not help but have been proven if the greater offense allegations were proven." *Id.*

As emphasized by Judge Bilbrey's dissent, "[a]lthough the conduct constituting capital sexual battery will as a practical matter ordinarily—if not always—also constitute lewd or lascivious molestation, the formal elements of these two crimes are quite different." *Id.* at 391 (quoting *Roughton v. State*, 185 So. 3d 1207, 1210 (Fla. 2016)). Section 794.011(1)(h), Florida Statutes (2016), defines "sexual battery" as the "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object," while section 800.04(5)(a) defines lewd or lascivious molestation as when a perpetrator "intentionally touches in a lewd or lascivious manner the breasts, genitals, genital area, or buttocks, or the clothing covering them, of a person less than 16 years of age, or forces or entices a person under 16 years of age to so touch the perpetrator."

Notably, the crime of "[l]ewd or lascivious battery is a permissive lesser included offense of sexual battery, *Williams v. State*, 957 So. 2d 595, 599 (Fla. 2007), and thus an 'acquittal down' could not have been granted reducing the charges to lewd or

lascivious battery either." *Thach,* 304 So. 3d at 391 n.2 (Bilbrey, J., dissenting) (citing *State v. Green,* 149 So. 3d 1146, 1148 (Fla. 2d DCA 2014) (explaining that only a necessarily lesser included offense of the charged offense may be the subject of an "acquittal down")). Thus, the State's only option was to substantively amend the four charges, leaving defense counsel with the prospect of delivering his closing argument without having had the opportunity to cross-examine the victims specifically about the amended charges.

It is axiomatic that due process of law affords a person charged with having committed a crime with the right to know what the charge is *before* proceeding to trial. Here, *after* the defense proceeded throughout the State's entire case-in-chief in reliance on the original charges, the State was permitted to substantively amend four charges. Defense counsel participated in jury selection, presented an opening statement, and conducted cross-examination of state witnesses, all under the umbrella of the original charges. Naturally then, once the State moved to amend the charges, defense counsel objected to the amendments and addressed the issue of prejudice. He stated: "I guess the only thing is that the lewd and

lascivious molestation would require evidence of lewd or lascivious touching.  And so the State is alleging that the union satisfies that and potentially I could have cross-examined the witness more in that sense, had I known the State might proceed on that charge.  And I understand that, you know, I had the opportunity to cross-examine the witness, but to that extent that's the only thing I can suggest to the court would create a prejudice."

Contrary to the First District's curious suggestion that it "cannot imagine what other questions that Appellant would have asked the witnesses about the manner of his touches," as noted by defense counsel at the time, he "could have cross-examined the witness more in that sense" had he known that the original charges would later be replaced with substantively different charges.  *Id.*

Accordingly, I disagree with the majority's conclusion that Thach was not prejudiced by these late amendments.

I also disagree with the majority's decision to disapprove of the long-established per se prejudicial rule, which the majority notes, *see* majority op. at 6, traces back to 1999.  *See* majority op. at 1-2 ("We . . . disapprove the Fourth District Court of Appeal's decisions in *Viladoine v. State*, 268 So. 3d 804 (Fla. 4th DCA 2019), and

- 19 -

*Simbert v. State*, 226 So. 3d 883 (Fla. 4th DCA 2017), to the extent that they apply a per se prejudice rule to midtrial amendments."). In its place, the majority created a new standard for determining whether charges may be changed at any time during a trial: "Prejudice, in this context, depends not on one factor, but on the totality of the circumstances at the time of the amendment." Majority op. at 9. Comparing this new standard to a *Richardson* inquiry, the majority contends that the new standard will not be difficult for Florida courts to apply uniformly.[9] *See* majority op. at 9. This standard, however, casts such a wide net of factors and circumstances to consider that it is unlikely any defendant will ever be able to prove prejudice, regardless of how obvious the prejudicial effect of an amendment may be.

Moreover, the majority's new standard ignores the import of the notice of charges aspect of due process of law: the accused must know the charges *before* trial. I agree with Judge Bilbrey that "[w]hen the State is permitted to amend a charge in midtrial, not merely to correct a scrivener's error, but instead to change an

_____

9. *Richardson v. State*, 246 So. 2d 771 (Fla. 1971).

element of the offense, a defendant is thus subjected to be found 'guilty of a charge for which he was not on trial' and such is a violation of due process." *Thach,* 304 So. 3d at 391 (Bilbrey, J., dissenting).[10]

For more than two decades, the per se prejudicial rule has guarded the right to due process in cases where the State seeks, during trial, to substantively change a charged offense. This sound rule should have been applied here. It makes absolutely no sense, after not only the conclusion of the State's case, but what turned out to be the presentation of all the evidence, to allow the State to amend four charges to allege crimes that require proof of different elements. For the majority to permit such a clear violation of due process will, in no small measure, facilitate the very thing that Florida laws, including Florida's extensive rules of criminal procedure, are intended to prevent—trials by ambush.

---

10. Judge Bilbrey and the majority have noted that the amendments in this case occurred in midtrial. However, because Thach exercised his right not to present a defense case, the amendments actually occurred at the end of the evidentiary phase of the trial, with only closing argument and the jury charge left.

The implications of the majority's decision to reject the per se prejudicial rule cannot be understated. As a result of the majority's disapproval of this decades-long safeguard, citizens will be required to proceed to trial without certainty of what the ultimate charges against them will be.

Because I cannot agree to such a diminution of our valued constitutional right to due process of law, I cannot agree with the majority's decision.

I respectfully dissent.

Application for Review of the Decision of the District Court of Appeal
Direct Conflict of Decisions

First District – Case No. 1D19-3660

(Leon County)

Jessica J. Yeary, Public Defender, and A. Victoria Wiggins, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida,

for Petitioner

Ashley Moody, Attorney General, Trisha Meggs Pate, Bureau Chief, and Virginia Chester Harris, Assistant Attorney General, Tallahassee, Florida

for Respondent